## J. W. CULPEPPER v. STATE.

No. A-204. Opinion Filed November 21, 1910.

1. HOMICIDE—Instructions — Presumption of Innocence—Shifting Burden of Proof. Upon a trial for murder where the defendant's plea was self-defense, the court gave the jury the following instruction: "You are instructed that the defendant in this case is presumed to be innocent of the crime charged in the indictment, and this is a presumption of law that remains with him and is thrown around him for his protection up to the moment when the killing is proved, or admitted. When the killing is proved or admitted by defendant and the plea of self-defense is interposed, as in this case, it then devolves upon defendant to show any circumstances of mitigation to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of the offense charged, unless the proof on the part of the state shows that the defendant was justified in doing the act." **Held,** that under sections 6828 and 6854 of Snyder's Comp. L. Okla., the instruction was not erroneous.

2. TRIAL—"Presumption of Innocence." The presumption of innocence fixes the burden of proof in the first instance, and designates the party whose duty it is to produce evidence and effect persuasion. It is not evidence and does not partake of the nature of evidence.

3. SAME. The presumption of innocence remains with the defendant only until it is overcome, and does not necessarily remain with him throughout the whole of the trial.

4.    INSTRUCTIONS—Credibility of Defendant. It is error to single
      out the defendant in a criminal case, and instruct the jury
      specially upon his credibility as a witness.

5.    EVIDENCE—Prior Contradictory Statements of Witness. A wit-
      ness' prior contradictory statement cannot be used as substan-
      tive testimony tending to show the truth of the facts then
      stated; it may be shown only for the purpose of affecting the
      credibility of the witness.

6.    SAME—Impeachment of Own Witness. A party cannot impeach
      his own witness by proof of a prior contradictory statement,
      where such party has not been misled by the witness, and where
      the witness has testified to no fact injurious to such party but
      has only failed to testify to matters beneficial to him.

(Syllabus by the Court.)

*Appeal from the District Court of Tulsa County; L. M. Poe, Judge.*

J. W. Culpepper was indicted for murder and convicted of manslaughter in the first degree; and he appeals. Reversed and remanded.

*Martin, Rice & Lyons,* for plaintiff in error.—On "presumption of innocence"; Greenleaf, Evidence (16th Ed.) vol. 1, p. 127; *Horn v. Territory,* 8 Okla. 52; *Coffin v. U. S.,* 156 U. S. 432; *Com. v. York* (Mass.) 43 Am. Dec. 373; *People v. Moughs,* (Cal.) 86 Pac. 191; *State v. Hanlon* (Mont.) 100 Pac. 1037. On instructions singling out defendant and charging as to his credibility; *Fletcher v. State,* 2 Okla. Cr. 300; *Banks v. State,* 2 Okla. Cr. 339.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State. No brief reached the reporter.

RICHARDSON, JUDGE. The first contention in this case is that the verdict was contrary to the evidence. An examination of the evidence discloses that the commission of the homicide by plaintiff in error was proved on the one hand and admitted on the other. His plea was self-defense; and upon this issue the evi-

dence, though conflicting, was amply sufficient to sustain the verdict.

The next assignment of error is predicated upon the action of the court in giving the jury the following instruction:

"You are instructed that the defendant in this case is presumed to be innocent of the crime charged in the indictment, and this is a presumption of law that remains with him and is thrown around him for his protection up to the moment when the killing is proved, or admitted. When the killing is proved or admitted by defendant and the plea of self-defense is interposed, as in this case, it then devolves upon defendant to show any circumstances of mitigation to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of the offense charged, unless the proof on the part of the state shows that the defendant was justified in doing the act."

It is contended that this instruction was erroneous because it deprived plaintiff in error of the application of the presumption of innocence to his plea of self-defense. It is also contended that the presumption of innocence is evidence in behalf of the accused, and that it remains with him throughout the whole of the trial under any and all circumstances until the jury have reached a verdict of conviction; and plaintiff in error requested the court to so instruct the jury, and assigns his refusal to do so as error. The two assignments are treated together in plaintiff in error's brief and we shall so consider them here.

Our statutes provide that "a defendant in a criminal action is presumed to be innocent until the contrary is proved." Sec. 6828, Snyder's Comp. L. Okla. It is also provided that, "Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." Sec. 6854, Snyder's Comp. L. Okla. Under the section first quoted the defendant goes into the trial presumed to be innocent, and this presumption remains with him *until* the

contrary is proved.   This fixes the burden of proof in the first in-
stance, and designates the party whose duty it is to produce evi-
dence and effect persuasion, the party upon whom lies at first the
risk of non-persuasion.   It is but another way of stating the max-
ims, *presumitur pro reo,* and *actore non probante reus absolvitur.*
The presumption is not evidence of any kind, nor does it partake
of the nature of evidence.   It is rather a rule in regard to the pro-
duction of evidence.   What is presumed, so long as the presump-
tion remains, need not be proved; and as to the matter presumed,
the burden is on him against whom the presumption exists.   Upon
this subject Mr. Wigmore has this to say:

. "The 'presumption of innocence' is a term which has been
the subject of two special fallacies, namely, (1) that it is a genu-
ine addition to the number of presumptions, and (2) that it is
*per se* evidence.   As to the first of these fallacies, it is to be noted
that the 'presumption of innocence' is in truth merely another
form of expression for a part of the accepted rule for the burden
of proof in criminal cases, i. e., the rule that it is for the prosecu-
tion to adduce evidence, and to produce persuasion beyond a rea-
sonable doubt.   As to this latter part, the measure of persuasion,
the 'presumption' says nothing.   As to the former part, the 'pre-
sumption' implies what the other rule says, namely, that the ac-
cused (like every other person on whom the burden of proof does
not lie) may remain inactive and secure, until the prosecution has
taken up its burden and produced evidence and effected persua-
sion; i. e., to say in this case, as in any other, that the opponent of
a claim or charge is presumed not to be guilty is to say in another
form that the proponent of the claim or charge must   evidence
it   *   *   *.

"As to the second fallacy, it seems to have been mainly propa-
gated by the passage of Professor Greenleaf, declaring that 'this
legal presumption of innocence is to be regarded by the jury, in
every case, as matter of evidence, to the benefit of which the party
is entitled.'   But it cannot be regarded   as 'matter of   evidence.'
No presumption can be evidence; it is a rule about the duty of
producing evidence.   This is, in itself, only a matter of the theory
of presumptions, and to that extent may be regarded as a mere
question of words,—of the way of phrasing a rule upon the sub-

stance of which there is no dispute. But when this erroneous theory is made the ground for ordering new trials because of the mere wording of a judge's instruction to a jury, the erroneous theory is capable of causing serious harm to the administration of justice". (Wigmore on Evidence, vol. IV, sec. 2511.)

And Professor Thayer in his famous lecture on the Presumption of Innocence in Criminal Cases, which is generally recognized as the best treatment of the subject extant, and in which the rule announced in *Coffin v. United States,* 156 U. S. 432, is analyzed and utterly refuted, says:

"Now, what does the presumption of innocence mean? Does it mean anything more than a particular application of that general rule of sense and convenience, running through all the law, that men in general are taken, *prima facie*—i. e., in the absence of evidence to the contrary, to be good, honest, free from blame, presumed to do their duty in every situation in life; so that no one need go forward, whether in pleading or proof, to show as regards himself or another, that the fact is so, but every one shall have it presumed in his favor? If it does, what is its meaning?"

And after tracing the history of the presumption, he continues:

"It is important to observe this, because, by a loose habit of speech, the presumption is occasionally said to be, itself, evidence; and juries are told to put it in the scale and weigh it. Greenleaf, in a single phrase, in the first volume of his treatise on Evidence, section thirty-four, a phrase copied occasionally into cases and text-books, has said: 'This legal .presumption of innocence is to be regarded by the jury in every case as matter of evidence, to the benefit of which the party is entitled.' This statement is condemned by the editor of the last edition of Greenleaf's book; and in Taylor on Evidence, the great English handbook, which followed Greenleaf's text closely, this passage is omitted, and .always has been omitted. In the latter part of Greenleaf's Evidence, volume III., which deals specifically with criminal cases, it does not appear. It is denied also by Chamberlayne, the careful editor of the works on Evidence of Best and Taylor.

"What can such a statement as this mean—that the presumption is to be regarded as evidence? Is it meant that on grounds of natural presumption or inference, innocence is ordinarily found

in criminal cases? As to that, if one would see the true operation of natural inference, and natural presumption in criminal cases, and would appreciate how entirely artificial, how purely a matter of policy the whole rule is which bids a jury on the trial to assume innocence, let him turn his attention to the action of courts at other stages than the trial."

And after proceeding to show that after indictment found the law presumes the defendant guilty for the purpose of determining whether bail shall be granted and in fixing the amount thereof, and for all other purposes except that of having a fair and impartial trial before a petit jury, he proceeds:

"The effect of the presumption of innocence, so far from being that of furnishing to the jury evidence—i. e., probative matter, the basis of an inference—is rather the contrary. It takes possession of this fact, innocence, as not now needing evidence, as already established *prima facie,* and says: 'Take that for granted. Let him who denies it, go forward with his evidence.' "

And he concludes as follows:

"A presumption itself contributes no evidence, and has no probative quality. It is sometimes said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption—being a legal rule or a legal conclusion—is not evidence. It may represent and spring from certain evidential facts; and these facts may be put in the scale. But that is not putting in the presumption itself. A presumption may be called 'an instrument of proof,' in the sense that it determines from whom evidence shall come, and it may be called something 'in the nature of evidence,' for the same reason; or it may be called a substitute for evidence, and even 'evidence'—in the sense that it counts at the outset, for evidence enough to make a *prima facie* case. But the moment these conceptions give way to the perfectly distinct notion of evidence proper—i. e., probative matter, which may be a basis of inference, something capable of being weighed in the scales of reason and compared and estimated with other matter of the probative sort— so that we get to treating the presumption of innocence or any other presumption, as being evidence in this its true sense, then we have wandered into the region of shadows and phantoms". (Thayer's Preliminary Treatise on Evidence, 1908, Appendix B, p. 551.)

And Elliott on Evidence, vol. I, section 91, 92 and 93, says:

"The office or effect of a true presumption is to cast upon the party against whom it works the duty of going forward with evidence. It has the force and effect of a *prima facie* case, and, temporarily at least, relieves the party in whose favor it arises from going forward with the evidence. This would seem to be its sole office and effect, considered merely in its character as a presumption. If nothing further is adduced, it may settle the case in favor of the party for whom it works; and, on the other hand, when the other party has gone forward with his evidence and the *prima facie* case is overcome, the force of the presumption is spent. * * *

"It is sometimes said that presumptions are evidence or instruments of proof having probative force, and to be put into the scale and weighed along with the other evidence in a case. This doctrine has the support of the Supreme Court of the United States in a comparatively recent case; but the opinion in that case has been severely criticised, and, in a lecture delivered about a year after the decision was rendered, it and the authorities upon which it is based were carefully reviewed by a learned professor, who had given the subject thorough study, and it was very clearly demonstrated that the authorities cited in the opinion give very little support to the doctrine. The court might have cited other authorities that seem to give at least equal countenance to the doctrine; but the true view would seem to be that presumptions are not evidence or instruments of evidence to be given probative force and weighed as evidence. The evidential facts upon which the presumption is based or from which it springs may take their place with the rest, and operate with their own natural force as a part of the entire mass of evidence or probative matter, and thus be put into the scale and weighed with the rest, but the presumption itself cannot be. To permit a presumption to be added to the scale when the facts upon which it is based are shown would be, in many cases at least, to give double weight to the same facts. To give them their own natural force as evidence, and then to add to that the presumption based on such facts, or, if the presumption is based upon presupposed facts, when the actual facts are shown, to add both together, or to weigh one against the other, would be equally erroneous. The two things are so different that they cannot be weighed in the same scales, and, to change the simile, the process would be much like the logical fallacy of begging the ques-

tion. 'A presumption which the jury is authorized to make is not a circumstance in proof.'

"A thorough consideration of the subject seems to lead to the following conclusions:

"A presumption operates to relieve the party in whose favor it operates from going forward in argument or evidence, and serves the purpose of a *prima facie* case until the other party has gone forward with his evidence, but, in itself, it is not evidence, and involves no rule as to the weight of evidence necessary to meet it. How much evidence shall be required from the other party to meet, overcome or destroy the presumption is determined by no fixed rule. · When a presumption is called a strong one, like the presumption of legitimacy, it is meant that it is accompanied by another rule relating to the weight of evidence to be brought in by him against whom it operates. It is sometimes said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption, being a legal rule or a legal conclusion, is not evidence. It may represent and spring from certain evidential facts, and these facts may be put in the scale; but that is not putting in the presumption itself. It may in a sense, be called 'an instrument of proof' or something 'in the nature of evidence', in that it determines from whom evidence shall come; or it may be called a substitute for evidence, in the sense that it counts at the outset for evidence enough to make a *prima facie* case; but it is not evidence in the true sense. It is not probative matter, which may be a basis of inference and weighed and compared with other matter of a probative nature."

And in the case of *Agnew v. United States,* 165 U. S. 36, 41 L. Ed. 624, the defendant requested the trial court to give the following instruction : "Every man is presumed to be innocent until he is proved guilty, and this legal presumption of innocence is to be regarded by the jury in this case as a matter of evidence to the benefit of which the party is·entitled. This presumption is to be treated by you as evidence giving rise to resulting proof to the full extent of its legal efficacy." This requested instruction embodied exactly what the Supreme Court had previously held in the Coffin case, and a portion of it was in Justice White's exact language,.wherein he said, "The fact that the presumption of inno-

cence is recognized as a presumption of law, and is characterized by the civilians as *presumptio juris,* demonstrates that it is evidence in favor of the accused; for in all systems of law legal presumptions are *treated as evidence giving rise to resulting proof to the full extent of their legal efficacy."* But notwithstanding this, the Supreme Court held that the trial court properly refused the requested instruction, "on the ground of the tendency of its closing sentence to mislead;" and it expressly approved the following instruction which the trial court did give:

"The defendant is presumed to be innocent of all the charges against him until he is proven guilty by the evidence submitted to you. *This presumption remains with the defendant until such time in the progress of the case that you are satisfied of the guilt beyond a reasonable doubt."*

And in that case the Supreme Court further said:

"Undoubtedly, in criminal cases, the burden of establishing guilt rests on the prosecution from the beginning to the end of the trial. *But when a prima facie case has been made out, as conviction follows unless it be rebutted, the necessity of adducing evidence then devolves on the accused."*

Now, under an express provision of our statutes (sec. 6854, Snyder's Comp. L. Okla.), where the charge is murder, if the prosecution proves the death of the deceased and the fact that he was killed by the defendant without proving circumstances tending to show either justification or excuse for the defendant, then there devolves upon the latter, if he contends that he was justifiable or excusable, the duty of producing evidence tending to show that fact. The quantum of evidence necessary for that purpose is fixed by law, and is nominated such as is sufficient to raise a reasonable doubt upon that issue. The state is not required in the first place to prove the absence of justification or excuse. Unless the evidence on the part of the state tends to show the presence of one or the other, the defendant must produce such evidence or a conviction will result. Therefore, when such stage of the proceeding has been reached and such condition has arisen that the burden of

proving circumstances that justify or excuse the homicide, to use the statutory expression, devolves upon the defendant, can it be said that he is then presumed to be innocent? If so, in what does the presumption consist? What is innocence? Innocence consists either in not having committed the homicide at all, or in the existence of facts or circumstances which justify or excuse it. And to be presumed innocent, the defendant must be presumed either not to have done the killing, or to have done it under circumstances constituting the act legally justifiable or excusable. Now when it has been proved beyond a reasonable doubt on the one hand, and admitted on the other, that the defendant committed the homicide, there can no longer be a presumption that he did not do so. Of this the contrary has been proved, has not been denied, but is explicitly admitted. So, if there exists now a presumption of innocence in the defendant's behalf, it consists solely in the presumption that the act was either justifiable or excusable. But here the statute intervenes and says that the burden of proving circumstances that justify or excuse the homicide devolves upon the accused. And by what process of reasoning can the statement that he is presumed to have been excusable or justifiable be reconciled with the statutory provision that the duty devolves upon him in such case to produce evidence tending to show his justification or excuse, failing in which a conviction follows? How can that be presumed which the law says must be proved? And of what value would the presumption be in such case?

Our code of criminal procedure was copied very largely from that of California, and sections 6828 and 6854 of Snyder's Comp. L. Okla. are identical with sections 1096 and 1105 respectively of California's Penal Code. And in *People v. Milner,* 122 Cal. 171, 54 Pac. 833, the Supreme Court of California, in construing those sections, said:

"Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the

crime committed only amounts to manslaughter, or·that the defendant was justifiable or excusable. Penal Code, sec. 1105. In this case the killing by the defendant was clearly established by the people's proof. No circumstances of mitigation or justification to bring the case within the exception contemplated by the section were shown in the prosecution's evidence. The burden of proof, then, of justifying and excusing the act, or of proving cir-· cumstances which would lessen the gravity of the offense to man-slaughter, devolved upon the defendant. *At the close of the prose-cution's case the presumption against the defendant was that he had committed an unlawful homicide. It may not be said that the presumption of innocence countervailed against this, since by the express provision of the law the presumption of innocence was overcome, and a presumption of guilt took its place when the re-quired facts were proven.*"

And again in *People v. Matthai*, 135 Cal. 442, 67 Pac. 694, the same court said:

"Complaint is made that the court failed to instruct the jury, as provided by section 1096 of the Penal Code, that a defendant in a criminal action is presumed to be innocent until the contrary is proved. Section 1127 of the Penal Code provides that in charg-ing the jury the court must state to them all matters of law neces-sary for their information, and assuredly the instruction as to pre-sumption of innoecnce is one which should be given in every case of the court's own motion. But in this case the defendant made no request that such instruction should be given, and, as held in *People v. McNutt*, 93 Cal. 658, in the absence of a request, the failure of the court to charge upon any specific principle of law will not be held error.

"The court charged: 'Up to the moment when the killing is proved, the prosecution must make out its case beyond any rea-sonable doubt.' Appellant detaches from its context this single sentence of the charge, and complains of it, but the instruction continued as follows: 'When the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify the homicide, by evidence on his part,—that is, the kill-ing being proved, the defendant must make out his case in miti-gation, or to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of

4 Cr.—8

the offense charged, unless, as before stated, the proof on the part of the prosecution tends to show the crime committed only amounts to manslaughter, or that the defendant was justified or excused in doing the act.' The whole instruction certainly presents a fair exposition of the law. As was said in *People v. Milner,* 122 Cal. 179: 'At the close of the prosecution's case the presumption against the defendant was, that he had committed an unlawful homicide. It may not be said that the presumption of innocence countervailed against this, since by the express provision of the law the presumption of innocence was overcome, and a presumption of guilt took its place, when the required facts were proven.' "

The situation of a defendant charged with murder who has been proved to have committed the killing, and who seeks to justify or excuse it, is analagous to that of a defendant in a civil action, whose plea is a confession and avoidance. There is no presumption in favor of the existence of matter in avoidance for either; for the duty of producing evidence is upon each of them. The quantum of proof, to be sure, is different, the defendant in the civil action being required to prove the matter alleged in avoidance by a preponderance of the evidence, while the defendant in the criminal action prevails if upon the whole case he succeeds merely in generating a reasonable doubt of his justification or excuse. But the quantum of proof required has nothing to do with the presumption. The fact that any degree of proof is required of the defendant shows that the presumption is not with him; for it is foolish to say that what is already presumed must be proved, and that what must be proved is presumed. For instance, the law says that all men are presumed sane and responsible for their acts, and that if a defendant charged with crime contends that he was excusable on account of insanity, the duty rests upon him of producing evidence at least sufficient to raise a reasonable doubt as to his sanity, unless the evidence on the part of the prosecution engenders such doubt. Now, suppose that A is charged with the murder of B, and his defense is insanity. The killing is proved beyond a reasonable doubt, and no facts indicating either justifica-

tion or excuse for A appear from any portion of the evidence on the part of the prosecution. The prosecution then rests. Is A presumed to be innocent at this stage of the proceeding? If so, it is because he is presumed insane; he is no longer presumed not to have killed B. And if he is still presumed innocent, he too may rest here, and an acquittal must follow; for it is absurd to say that a man can be returned guilty while he is presumed innocent. The same is true if A's plea is self-defense or that the killing was an accident. The statute expressly declares that the burden of proving circumstances that justify or excuse the homicide is on him. The presumption is no longer with him. The law says to him at this stage of the proceeding: "You have been stripped of your presumption of innocence. Produce evidence of your insanity, your self-defense, or your accident, or suffer the consequences."

It is true that the burden of proof properly so called is on the prosecution from the beginning to the end of the trial. That is to say, to obtain a verdict of guilty, the prosecution must by evidence exclude every reasonable doubt of the defendant's innocence, and see to it that it stands excluded when the trial ends. If, when the prosecution has concluded its evidence in chief, its character is such that, if unrebutted, a jury under their oaths should and would return a verdict of guilty, then the prosecution has borne its burden to this stage. If the defendant produces no evidence, the trial closes, the prosecution has borne its burden throughout the trial, and a conviction is therefore the result. On the other hand, if the defendant does not rest, but produces evidence sufficient to engender a reasonable doubt, either upon the direct case, or as to the truth of matter set up in avoidance, and the prosecution allows that doubt to remain when the taking of evidence is closed, then the prosecution fails. It has not maintained its burden, for it has not caused a reasonable doubt of innocence to stand excluded when the trial ends. But, if when the state concludes its evidence in chief, it is such that if unrebutted a verdict of guilty should result, the presumption of innocence is then

overcome; the defendant cannot then rest and demand an acquittal because he is presumed to be innocent. That which the presumption of innocence relieved him of so long as it existed, namely, the necessity of adducing evidence, now devolves upon him. The burden of proof which the law created, that of having a reasonable doubt of innocence excluded when the trial ends, is still on the prosecution. The hazard of losing, which the proof on the part of the prosecution created, is on the defendant. The presumption of innocence having been overcome, it is no longer "his sufficient shield", "an aegis of protection" for him. He must now go forward with his evidence, or suffer the consequences.

But it is said that the presumption must be evidence, and must always abide with the defendant throughout the whole trial, for if the evidence upon any essential issue be equally balanced or the matter be doubtful, the presumption of innocence turns the scale for the defendant. We do not so understand the law. The quantum of proof necessary to effect persuasion and establish guilt has nothing to do with the presumption of innocence. The law might provide that a mere preponderance of evidence should be sufficient to establish guilt, and still prescribe for the defendant this same presumption of innocence. The law does provide that the defendant's guilt must be proved beyond a reasonable doubt; and if upon the whole case the evidence be equally balanced, or the matter be left doubtful, or even if the evidence preponderates in behalf of guilt, but does not exclude a reasonable doubt of innocence, an acquittal must result. Not, however, because the presumption is thrown into and tips the scales; even if the presumption be evidence, that would be determining the question of guilt by a mere preponderance of the evidence; but an acquittal follows because the prosecution has not complied with that other provision of the law requiring proof of guilt to the exclusion of a reasonable doubt.

It is also said that the presumption must under all circumstances abide with the defendant throughout the trial, because the

jury are not to form any opinion as to guilt or innocence until they have heard all the evidence and until the matter has been finally submitted to them. It is true that the jury are to keep open minds at all times, ready for the reception and proper weighing of all evidence given before them, the application thereto of the court's instructions, and a consideration of the attorneys' argument; but we do not understand that this duty grows out of the presumption of innocence, that it is in any manner dependent upon the presumption for its existence, or that the duty disappears when the presumption has been overcome. On the contrary, we opine that it springs from that provision of the law expressed by the maxim, *audi alterem partem,* and that this same duty would appertain to a juror if the law presumed guilt instead of innocence, or if it indulged no presumption at all. This duty exists in all cases, both civil and criminal, throughout the whole trial, though successive presumptions may arise in behalf of each party and be overcome, and though the burden of proof, i. e., the duty of producing evidence, may shift time after time. The jury are not to form any opinion as to guilt or innocence until the case has been finally submitted to them for their verdict; but that does not mean that in fact the evidence at a certain stage of the proceeding was not sufficient to establish guilt, so that if the parties had rested there a conviction would have resulted; that the presumption of innocence had not in fact been overcome, and the necessity of adducing evidence had not shifted to the defendant, so that the risk of non-persuasion was on him. Such may have been the case without the jury at that time having so determined. Such is often the case. The present knowledge or ascertainment of that fact is not necessary to its present existence. The court and the parties take cognizance of these matters as the trial progresses in regulating the production of evidence. If, when the state rests, the defendant is still presumed to be innocent, then he too may safely rest, for, as already stated, a jury cannot return a verdict of guilty so long as they presume him innocent; but before he does so, let him

be sure, and determine at his peril, that the presumption is still with him.

Also, it is said that the presumption of innocence must abide throughout the whole of the trial and relate to every element of the crime charged, for if the circumstances attending any material act proved at any stage of the proceeding are subject to two different interpretations, one such as to make the act criminal, and the other, innocent, the presumption of innocence impels the adoption of that interpretation which favors innocence. We do not agree with this statement. We think the true statement is that if the state of the evidence is such that a reasonable doubt of the criminality of the act or acts remain after a consideration of all the evidence in the case, the prosecution has failed. If the minds of the jurors are left hesitating or vacillating between guilt or innocence, then the rule respecting a reasonable doubt upon the whole case impels an acquittal. The presumption does not, and to say that it does is again to say that the matter is determined by a preponderance of the proof, that the presumption is proof and creates a preponderance for the defendant.

The presumption of innocence is the same presumption which obtained in behalf of the accused at common law. In not a single instance has it been amplified by statute. And the statements that it is evidence in behalf of the accused, and that it always abides with him until the verdict is reached, are both judicial innovations, never heard of anywhere, and not found in any text book or report, until after the beginning of the nineteenth century. Such statements wholly ignore the history of the presumption; they are at variance with the reason and philosophy of it, and they involve the subject in such mysticism and inexplicable confusion that it becomes impossible of application or even comprehension.

We think the rules contended for are contrary to the whole rationale of a trial; that when the trial of any criminal case is observed throughout its various stages, it becomes apparent that no such rules exist. And when they are given as an instruction, they

are mere empty words, a verbal formality, devoid of meaning and impossible of application. When the jury go to deliberate upon their verdict, they weigh no presumption; they look to the proof and only to the proof. They weigh the evidence and the evidence only. The presumption of innocence fulfilled its purpose when it required the state first to go forward with its evidence and establish a *prima facie* case. Thenceforth it is solely a question of proof and the quantum thereof. This whole subject is exhaustively discussed in Thayer's Preliminary Treatise on Evidence (1898), Appendix B, p. 551. See also Wigmore on Evidence, vol. IV, sec. 2511; Greenleaf on Evidence, (16th Ed.) chap. 6, sec. 14 w.; *Berry et al. v. State,* decided by this court at this term, *infra;* Elliott on Evidence, sections 91, 92, and 93; Thayer's Preliminary Treatise on Evidence, chapters VIII and IX; *State v. Kennedy,* 154 Mo. 268, 55 S. W. 293; *People v. Ostrander,* 110 Mich. 60, 67 N. W. 1079; *State v. Quigley,* 26 R. I. 263, 58 Atl. 905; *Waters v. State,* 117 Ala. 108, 22 So. 490; *State v. Maupin,* 196 Mo. 164, 93 S. W. 379; *Williams v. State,* 144 Ala. 14, 40 So. 405; *Morehead v. State,* 34 Ohio St. 217; *Stevens v. Com.,* 20 Ky. L. 48, 45 S. W. 76; *State v. Young,* 105 Mo. 634; *State v. Harper,* 149 Mo. 514; *State v. Heinze,* 66 Mo. App. 135; *Strickland v. State,* 151 Ala. 31, 44 So. 90. We decline to follow in this respect the cases of *Horn v. Territory,* 8 Okla. 52, 56 Pac. 846, and *Coffin v. United States,* 156 U. S. 432; and we hold that there was no error in the instruction given.

The next assignment is that the court erred in giving the jury the following instruction:

"You are instructed that the defendant is a competent witness in his own behalf, and when he testified as a witness in this case he became as any other witness, and his credibility is to be tested by and is subject to the same tests as are legally applied to any other witnesses; and in determining the degree of credibility that should be accorded to the testimony of the defendant the jury have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct on the witness stand."

·This singling out the defendant and instructing specially upon his credibility as a witness, was properly excepted to; under the uniform holding of this court it was erroneous, and the state of the case was such as to make the error reversible. *Fletcher v. State,* 2 Okla. Cr. 300, 101 Pac. 599; *Banks v. State,* 2 Okla. Cr. 339, 101 Pac. 610; *Crow v. State,* 3 Okla. Cr. 428, 106 Pac. 556.

Objections are urged to the court's instructions relative to plaintiff in error's right of self-defense, but we do not find them tenable; and the law upon this subject has been so often stated and discussed by this court, that we deem a discussion of the questions here raised unnecessary.

Plaintiff in error introduced as a witness in his behalf Robert Webb, a cousin of the deceased. This witness was not present during the fatal difficulty, and there was no evidence in the case tending to show that he was concerned in the least in the trouble which resulted in the killing. He testified that a short time before the killing, the deceased, one Reps West and himself were together in deceased's yard, and that he (the witness) was at that time considerably intoxicated; that there was no conversation between the three in regard to plaintiff in error, and that he had no recollection of even hearing the latter's name mentioned. He was then asked if, immediately after hearing of the homicide, he did not go to a certain place and say to certain women: "Dave (the deceased), and Reps and I had been drinking around this afternoon, and we talked about going down and doing old man Culpepper up, and we left the house and started down toward Culpepper's store to do him up, and on the way down there I told the boys they were too drunk, and tried to get them not to go, but to wait until tomorrow when they were sober, and we would do him up right; and Reps West said to Dave Webb, 'Come on Dave, and be a man, I will stand by you'; and they went on, and I knew the trouble was going to happen." This question the witness answered in the negative. Plaintiff in error then offered to prove by the women that at the time and place specified the witness made to them the

statement just quoted. The court sustained an objection to the offered testimony, and its action in so doing is assigned as error.

The testimony offered was incompetent as substantive evidence tending to prove as a fact the formation and existence of a design to injure plaintiff in error and that the deceased acted in accordance therewith. For such purpose the offered evidence was wholly hearsay and inadmissible. Had the evidence been admitted, it could have been received for no other purpose than to show that Robert Webb made the statement which he denied making; it would not have been evidence that the statement made by him was true. So, if the evidence tendered was competent at all, it was so only for the purpose of impeaching the witness. But this witness was introduced by plaintiff in error. There was no contention that he had ever made a different statement to plaintiff in error or his attorney, or that he had ever led either to believe that his testimony would be other than what it was. And the witness gave no testimony against plaintiff in error; he merely failed to testify to exculpatory matter. Apparently he was placed on the stand merely to be impeached. And what would have been accomplished by impeaching him? The impeaching evidence offered could neither have proved nor disproved any substantive matter in the case. It could only have affected the credibility of the witness. And what could have been gained by affecting the credibility of a witness who had testified to nothing? Why set up a man of straw and immediately proceed to knock it down? A witness cannot be brought on merely to be impeached. The right of a party to thus impeach his own witness who gives testimony injurious to him is not involved here, and upon that we express no opinion; but in the present case the evident purpose was to prove a substantive fact by a purely hearsay statement under the guise of impeaching a witness. This the court properly refused to permit. See Wigmore on Evidence, vol. II, sec. 904, subd. 8; *Sturgis v. State,* 2 Okla. Cr. 362, 386, 102 Pac. 57; *Langford v. Jones,* 18 Or. 307, 22 Pac. 1064; *People v. Jacobs,* 49 Cal. 384; *Mercer v. State,*

41 Fla. 279, 26 So. 317; *Hull v. State,* 93 Ind. 128; *Champ v. Com.* 2 Metcalf (Ky.) 17.

For the error pointed out the cause is reversed and remanded with directions to set aside the judgment and grant plaintiff in error a new trial.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.