## BRITISH AMERICA ASSUR. CO. OF TORONTO, CANADA, v. BOWEN et al.
### No. 2606.

Circuit Court of Appeals, Tenth Circuit.

March 2, 1943.

Walter D. Hanson, of Oklahoma City, Okl. (F. A. Rittenhouse and John F. Webster, both of Oklahoma City, Okl., on the brief), for appellant.

J. H. Everest, of Oklahoma City, Okl. (M. W. McKenzie, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Willie Mae Bowen and Local Federal Savings and Loan Association[1] instituted this action in the District Court of Oklahoma County, Oklahoma, upon a policy of fire insurance issued by the British America Assurance Company[2] to recover for the loss of a dwelling house. The action was duly removed to the Federal court.

Bowen is the owner of a 10-acre tract of land situated in Oklahoma County, Oklahoma. A two-story dwelling house was located thereon. The house was partially destroyed by fire about midnight on the night of October 3-4, 1940.

The Association held a first and second mortgage on the land and house. It instituted foreclosure proceedings and on June 21, 1940, obtained a decree against Bowen awarding it judgment for $5,505.53, with interest at 10 per cent from September 30, 1939, and for $640, attorney's fees, on the indebtedness secured by the first mortgage, and for $588.56, with interest at 10 per cent from September 30, 1939, and for $62.50, attorney's fees, on the indebtedness secured by the second mortgage, and adjudging that the mortgages be foreclosed and the property sold to satisfy the judgment. The state of Oklahoma acquired a portion of the property for highway purposes and paid therefor $350, which was received by the Association and credited on the judgment.

The Association sought recovery for the balance due on its judgment and Bowen sought recovery for the balance of the loss.

In its answer, the Assurance Company alleged that the fire was of incendiary origin and was caused or procured by Bowen, and that upon payment to the Association of the balance due on its judgment the Assurance Company would be entitled to be subrogated to the Association's judgment.

Bowen had brought another action upon an insurance policy issued on September 1, 1940, by another insurance company insuring the personal property in the house against loss by fire. The insurance company in that action set up as defenses that the fire was of incendiary origin and was caused or procured by Bowen, and that she had sworn to false statements respecting the value of the household furniture in her proof of loss. By stipulation the record of the testimony offered in the state court action was introduced in the instant case.

The evidence established beyond peradventure of a doubt that the fire was incendiary. The gas and electric utilities had been cut off. Bowen used a gasoline range and in cold weather a wood stove. The firemen were able to put the fire out in about one and one-half hours. They discovered that the baseboard had been removed in the dining room and shingles saturated with gasoline had been placed in the walls. They found rags about the ironing board in the kitchen that had been saturated with kerosene. They found that there had been independent fires in the dining room, kitchen, one bedroom, and the clothes closet in another bedroom. Some persons had drunk coffee in the kitchen prior to the fire and had left the unwashed coffee cups on the kitchen table. The assistant fire chief made an investigation about one o'clock on October 4 and discovered seven different places where the house had been set on fire.

Prior to the fire, Bowen had caused a survey and blue print plat of the 10-acre tract to be made subdividing it into lots, blocks, streets, and alleys. The house in its condition would have been a disadvantage to the subdivision project. Prior to the fire, Bowen had stored a large amount of household furniture, rugs, and beauty parlor equipment in a chicken house

---

[1] Hereinafter called the Association.

[2] Hereinafter called the Assurance Company.

on the premises, which was not destroyed by the fire. She had also removed beauty parlor equipment, her trunk, and personal effects to the home of Wesley B. Warbington, in Shawnee.

On September 29, 1940, J. W. Steele, who was engaged in repairing and upholstering furniture in Shawnee, went to Oklahoma City, at Bowen's request, to transport a davenport and two chairs to Shawnee, in order to reupholster them. He lost a wheel off his trailer and did not move the furniture until September 30, 1940. Steele observed a three-piece set of wicker furniture in the house and offered to purchase it from Bowen for $20 and apply that amount on his charge for upholstering the other furniture. Bowen refused to sell the wicker furniture, saying to Steele, "No, you couldn't have that, the insurance company is going to have that." Steele observed a large amount of household furniture stored in the chicken house. Bowen also requested Steele to transport a large radio to Shawnee. Steele attempted to load the radio, but was unable to get it into his car. Bowen told him she had sold the radio to a party in Shawnee for $25. In her action to recover for the loss of the furniture, she testified that the radio was worth $250.

The amount of the policy on the personal property taken out on September 1, 1940, was largely in excess of the value of the personal property in the house at the time of the fire.

Bowen had the only key to the house and when she left the premises to go to Shawnee shortly before October 3, 1940, she locked the doors and the windows in the house.

Prior to the fire, a piano and a rug had been repossessed from her under a chattel mortgage for failure to pay the installments due.

The house was in a rundown condition and about two months prior to the fire, Bowen considered remodelling the house, and obtained figures on the cost thereof, but did not go forward with the remodelling.

Bowen testified that she was at the house on Sunday and Monday preceding the fire; that on October 3, she was in Shawnee and drove Speed Raines and W. M. Jarvis, at their request, to the south part of Pottawatomie County, leaving Shawnee about 10 o'clock in the morning and returning about 6 o'clock in the afternoon; that she took Jarvis and Raines to their homes, and then went to the home of J. E. Mayfield, where she and her brother packed some suitcases; that she and her brother left the Mayfield home about 9 o'clock P.M., and arrived at Warbington's home about 9:30 or 10 o'clock P.M.; that she spent the night at Warbington's home. Wesley B. Warbington testified that Bowen came to his home about 9 o'clock P.M., October 3, 1940; that she left and returned about 10:30 o'clock; that she was there when he retired and that she was there the next morning; that her car was parked in the driveway that evening and was there the next morning.

Bowen denied she set the house on fire or caused it to be set on fire.

The distance from Shawnee to Oklahoma City by paved highway is 39 miles. There was ample time between 10:30 o'clock P. M., October 3, 1940, and midnight of that night for Bowen to drive to Oklahoma City, set the house on fire, and return to Shawnee before the following morning.

At the close of the evidence, the trial court stated: "I find that the house was set afire in this case and I agree with the verdict rendered herein in the state court. * * * I think the house was set afire, and I charge the owner of the property with that in this case."

He concluded, however, that the Association was entitled to recover on the policy.

Thereafter, the trial court made formal findings in which he found that the fire was of incendiary origin, but concluded that the evidence was not sufficient to overcome the presumption of innocence on the part of Bowen, and awarded judgment in favor of the Association and Bowen for $5,400, with interest at six per cent from January 29, 1941.

The Assurance Company has appealed.

Since the house was owned by Bowen and was not possessed or occupied in whole or in part by another, the burning of the building by Bowen would not constitute arson.[3]

However, 21 O.S.1941, § 1661, makes it an offense punishable by imprisonment in the penitentiary for a person to willfully burn property insured against loss or damage by fire, with intent to defraud the in-

[3] 21 O.S.1941, §§ 1381, 1386; Clemens v. State, 17 Okl.Cr. 274, 187 P. 1100; People v. De Winton, 113 Cal. 403, 45 P. 708, 33 L.R.A. 374, 54 Am.St.Rep. 357.

surer. The willful burning of the property by Bowen in order to collect for the loss from the insurers would constitute a violation of § 1661, supra.

It is a presumption of law that a person is innocent of crime. The presumption applies in civil cases where the question whether a person committed a crime is collaterally involved.[4]

The presumption of innocence is not evidence. It is a presumption of law. It has no probative quality and is not the basis for an inference. It requires the party who asserts the contrary to assume the burden of proof.[5]

In Berry v. State, 4 Okl.Cr. 202, 111 P. 676, 679, 31 L.R.A.,N.S., 849, the court said: "The sole purpose of the law in creating this presumption is to designate the party upon whom lies at the beginning the risk of nonpersuasion and upon whom rests therefore the duty of producing evidence."

And in a civil case where some evidence is introduced to overcome the presumption, the presumption disappears from the case and the evidence is to be weighed without regard to the presumption.[6]

The rule is stated in Wigmore on Evidence, 3d Ed., Vol. 9, § 2491, pp. 289, 290, as follows:

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule: * * *

"It is therefore a fallacy to attribute (as do some judges) an artificial probative

---

[4] Home Ins. Co. of N. Y. v. Murphy, 223 Ala. 566, 137 So. 393, 395; 31 C.J., p. 748, § 130.

[5] Culpepper v. State, 4 Okl.Cr. 103, 111 P. 679, 31 L.R.A.,N.S., 1166, 140 Am.St. Rep. 668; Berry v. State, 4 Okl.Cr. 202, 111 P. 676, 31 L.R.A.,N.S., 849; Price v. United States, 8 Cir., 218 F. 149, 152, 153, L.R.A.1915D, 1070; Holt v. United States, 218 U.S. 245, 253, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; Allen v. United States, 164 U.S. 492, 500, 17 S.Ct. 154, 41 L.Ed. 528; Commonwealth v. Madeiros, 255 Mass. 304, 151 N.E. 297, 300, 47 A.L.R. 962; Frankel v. New York Life Ins. Co., 10 Cir., 51 F. 2d 933, 935; Wirthlin v. Mutual Life Ins. Co., 10 Cir., 56 F.2d 137, 139, 86 A.L.R. 138; New York Life Ins. Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218; notes 34 A.L.R. 938, 942; 94 A.L.R. 1042.

In Culpepper v. State, 4 Okl.Cr. 103, 111 P. 679, 681, 682, 31 L.R.A.,N.S., 1166, 140 Am.St.Rep. 668, the court said:

"And Prof. Thayer in his famous lecture on the Presumption of Innocence in Criminal Cases, which is generally recognized as the best treatment of the subject extant, and in which the rule announced in Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481, is analyzed and utterly refuted, says: * * * 'Greenleaf, in a single phrase, in the first volume of his treatise on Evidence (section 34), a phrase copied occasionally into cases and text-books, has said: "This legal presumption of innocence is to be regarded by the jury in every case as matter of evidence, to the benefit of which the party is entitled." This statement is condemned by the editor of the last edition of Greenleaf's book; and in Taylor on Evidence, the great English handbook, which followed Greenleaf's text closely, this passage is omitted, and always has been omitted. * * * The effect of the presumption of innocence, so far from being that of furnishing to the jury evidence—i. e., probative matter, the basis of an inference—is rather the contrary. It takes possession of this fact, innocence, as not now needing evidence, as already established prima facie, and says: "Take that for granted. Let him who denies it go forward with his evidence."' And he concludes as follows: 'A presumption itself contributes no evidence, and has no probative quality. * * *'

"'A presumption operates to relieve the party in whose favor it operates from going forward in argument or evidence, and serves the purpose of a prima facie case until the other party has gone forward with his evidence, but in itself it is not evidence, and involves no rule as to the weight of evidence necessary to meet it. * * * It is not probative matter, which may be a basis of inference and weighed and compared with other matter of a probative nature.'"

[6] United States v. Pulver, 2 Cir., 54 F. 2d 261, 263; Pariso v. Towse, 2 Cir., 45 F.2d 962, 964; Echols v. Hurt, 116 Okl. 43, 243 P. 493, 495; Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 69, 32 A.L.R. 1490; Kramer v. Nichols-Chandler Home B. & B. Co., 103 Okl. 208, 229 P. 767.

force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with *some* evidence to the contrary."

In Echols v. Hurt, 116 Okl. 43, 243 P. 493, 495, the court said: "'A presumption in the true sense—that is, a legal presumption—is in its characteristic feature a rule of law laid down by the judge, and attaching to evidentiary facts certain procedural consequences as to the duty of production of other evidence by the opponent. If the opponent does offer evidence to the contrary, the presumption disappears, and the case stands upon the facts and the reasonable inferences to be drawn therefrom.'"

■ Ordinarily, a finding of the trial court on a controverted issue of fact will not be disputed on appeal, unless it is clearly erroneous. And where the trial judge has had the opportunity of observing the witnesses while testifying and their demeanor on the witness stand, due regard will be given to the fact that he is in a better position to judge of their credibility. But here, the only evidence offered on the issue of whether Bowen set the house on fire or procured it to be set on fire was the written evidence adduced in the state court action. Parenthetically, it may be observed that the jury there found against Bowen. Hence, the ordinary rule that an appellate court will generally accept the finding of the trial court upon a controverted issue of fact, where the trial court saw the witnesses and observed their demeanor while testifying, is without application. On the contrary, this court is equally capable of examining the evidence and drawing conclusions from it and is under the duty of doing so.[7]

■ Here, Bowen was in straitened financial circumstances. The mortgages had been foreclosed and the foreclosure sale was imminent. She had lost other property by her inability to pay the installments due thereon. She contemplated subdividing the 10-acre tract and the house was a disadvantage to that project. She was not regularly occupying the house as a home. The evidence does not even suggest ill-will toward Bowen, or other motive on the part of any other person to have set the house on fire. The policy on the household furniture taken out slightly over a month before the fire was for an amount greatly in excess of the personal property in the house at the time of the fire. She had removed a large amount of the household furniture and beauty parlor equipment to another building on the premises. She had removed other personal property to Shawnee. She had attempted to remove the radio to Shawnee. Her statement to Steele with respect to the wicker set, "No, you couldn't have that, the insurance company is going to have that" admits of no other construction than that she contemplated a fire. The removal of large quantities of household furniture from the house to the other building on the premises was in nowise explained, and no reason was given therefor. The distance from Shawnee to Oklahoma City over a paved highway is only 39 miles. No witness saw her from 10:30 P. M., October 3, until the morning of October 4. She could have readily traveled to Oklahoma City and set the fire between 10:30 P. M., and midnight of October 3, and returned to Shawnee before the morning of October 4.

The evidence clearly established a motive on the part of Bowen to cause the fire; that she prepared for the fire by removing large amounts of personal property from the house shortly before the fire; that the fire was of incendiary origin; that the house was locked and that she had the keys; and that she contemplated a loss from fire on the 30th day of September, when she had the conversation with Steele; that some persons drank coffee in the house prior to the fire and left the unwashed coffee cups. Aside from the bald denial that she set the house on fire, the evidence on the issue is not in substantial conflict, and we think it admits of no other conclusion than that Bowen set the house on fire or procured it to be done.

We conclude that Bowen was not entitled to recover on the policy. The judgment in favor of Bowen is reversed.

■ If the Assurance Company so elects, it may pay the Association the entire balance due on its judgment and the Assurance Company will then be subrogated to the

[7] United States v. Corporation of President, etc., 10 Cir., 101 F.2d 156, 160; Munro v. Smith, 1 Cir., 259 F. 1, 2, 3; Photoplay Pub. Co. v. La Verne Pub. Co., 3 Cir., 269 F. 730, 732; Nashua Mfg. Co. v. Berenzweig, 7 Cir., 39 F.2d 896, 897; Kaeser & Blair, Inc., v. Merchants' Ass'n, Inc., 6 Cir., 64 F.2d 575, 576.

Association's rights under the decree of foreclosure.[8]

The judgment should be modified so as to accord the Assurance Company the right to pay the balance due the Association and become subrogated to the Association's rights under its decree of foreclosure.

The costs of this appeal will be assessed against Bowen.

---

[8] Williams & Miller Gin Co. v. Baker Cotton Oil Co., 108 Okl. 127, 235 P. 185, 186; Harter v. American Eagle Fire Ins. Co., 6 Cir., 60 F.2d 245, 246; 26 C. J., p. 461, § 626.