## G. V. WINSTON v. STATE.

No. A-2490—Opinion Filed July 19, 1919.

Rehearing Denied January 12, 1920.

(185 Pac. 832.)

1. **EVIDENCE—Similar Acts—Embezzlement.** Where the defendant, the cashier of a railway company, is charged with embezzling a specific sum of money on a certain day, evidence tending to show that he, on numerous dates for about two months immediately preceding the date of the alleged embezzlement upon which a conviction was had, regularly took other similar moneys from the railway company which had come into his hands as cashier, was properly admitted as tending to show a system and regularity of embezzlements by the defendant from day to day, and as also tending to connect defendant with the commission of the offense charged.

2. **SAME—Discrepancies in Defendant's Books.** Evidence admitted showing discrepancies in the books of the railway company kept by the defendant is competent where the proof of the embezzlement charged is so closely linked with the evidence of false entries in the books that proof of one is largely dependent upon proof of the other.

3. **APPEAL AND ERROR—Harmless, Error—Instructions.** Where the charge of the court, considered as a whole, sufficiently covers the law of the case and is not misleading, the judgment will not be reversed because of misdirection in a particular paragraph of the court's charge which did not deprive the defendant of any constitutional or statutory right nor result in a miscarriage of justice.

*Appeal from District Court, Caddo County;*
*Will Linn, Judge.*

G. V. Winston was convicted of the crime of embezzlement, and he appeals. Judgment affirmed.

*A. J. Morris,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Caddo county, in which court the defendant, G. V. Winston, was convicted in March, 1915, of the crime of embezzlement, and sentenced to serve a term of one year's imprisonment in the state penitentiary.

For about three years prior to the 6th day of November, 1914, the defendant had occupied the position of cashier in the freight department of the Chicago, Rock Island & Pacific Railway Company at the city of Anadarko, in said county. As such cashier, it became and was his duty to collect the sums of money due to said railway company for freight collectible at said office, and to remit same daily to the Illinois Trust & Savings Bank at Chicago, in the state of Illinois, which bank was the designated depository for the funds of said railway company.

Winston had been collecting and forwarding these funds daily during his occupancy of the position as cashier at said station. It had been his custom and the record shows that for over two years prior to the 6th day of November, 1914, the defendant had invariably purchased a draft from a bank in the city of Anadarko with the collections made for each particular day, and had forwarded such drafts daily to the aforementioned Illinois Trust & Savings Bank, the drafts being inclosed in an envelope furnished by the railway company for that purpose and forwarded by express, the envelope with its inclosure securely sealed being handed to the express messenger on the Rock Island train east which passed through Anadarko between 5 and 6 o'clock in the evening.

Without going into an extended detailed statement of the facts and circumstances proved by the state's evidence, it is sufficient to say that the evidence on the part of the state, if believed by the jury, establishes on the part of the defendant an embezzlement on the 6th day of November, 1914, of the sum of $203.40, the property of the Chicago, Rock Island & Pacific Railway Company, which had come into the possession of the defendant as agent and employe of said company at Anadarko, Okla., which said sum was a part of a total sum of $580 collected by the said defendant on said 6th day of November, 1914, all of which sum, including the said specific sum of $203.40, the defendant embezzled and appropriated to his own use.

. The defense interposed was that the defendant had forwarded the entire sum of $580 collected by him on the 6th day of November, 1914, to the home office of the railway company in Chicago, inclosed in the company's form envelope properly sealed and delivered to the express messenger on the evening train of that date, and that, if

said money was embezzled, it was taken by some person after it left the hands of the defendant. There is evidence in the record which, if believed, supports the defendant's contention and would establish his innocence and authorized his acquittal.

It would serve no good purpose to enter into a discussion of the weight to be given the evidence on the part of the state as against that introduced in behalf of the defendant. The evidence is sharply in conflict. If the state's evidence is to be believed, the defendant is clearly guilty of the offense charged; on the other hand, if the testimony of the defendant himself, supported by a witness who said he saw him forward the money to the company at Chicago, is to be believed, he should have been acquitted.

The jury has settled this plain conflict adversely to the contention of the defendant, and as there is ample evidence in the record sufficient to sustain the conviction, this court will only consider alleged errors of law committed during the course of the trial, and urged specifically as grounds for reversal.

It is first contended that the court erred in admitting certain incompetent evidence against the defendant, over his objection and exception. The evidence complained of consists of expense bills showing the amount paid defendant by the Anadarko Cotton Oil Mill for freight from September 25, 1914, to October 31, 1914, and the cashbook covering the same dates kept by the defendant in his own handwriting, which showed that the defendant received a less amount than that shown by the expense bills. The evidence of Mr. Newman, an officer of the cotton oil mill company, was to the effect that he had paid the defendant the entire amount of freight shown by the expense bills.

while the cashbook kept by the defendant during that period of time showed only the payment of a smaller amount. In nearly every instance the cashbook and purported duplicates of the expense bills showed that a reduction of 10,000 pounds had been made in the freight shipped, and a corresponding smaller amount, according to the freight tariff, was placed and entered in the cashbook by the defendant, so that the purported duplicate expense bills and the amount of cash entered by the defendant in the cashbook tallied, and the only way the defalcation could be discovered was by an examination of the expense bills retained by the cotton oil mill company.

While the auditor for the railroad company was in the city of Anadarko from the 28th of October, 1914, until the 6th of November, of said year, and while the defendant left Anadarko on the 7th of November, 1914, and did not return until some time about the middle of December, there was no discovery made of the discrepancy between the freight paid by the Anadarko Cotton Oil Mill Company and the freight credited as having been paid by said company on the books of the railroad company by the defendant until after the defendant's departure and subsequent to the 6th of November, 1914.

It is true the defendant was not charged with having embezzled any amount of money paid for freight by the Anadarko Cotton Oil Mill Company on any date from September 25, 1914, to October 31, 1914, but this evidence tended to show a system and regularity of embezzlements by the defendant from day to day of freight paid by the Anadarko Cotton Oil Mill Company. The auditor of the railroad company was on and prior to the 6th day of November, 1914, engaged in auditing the accounts of the de-

fendant at the Anadarko station. The defense interposed as against this particular embezzlement charged was that he remitted the money to the home office of the company in Chicago; that he did not owe the company any money and was not short in his accounts. The evidence complained of was clearly admissible under the hold of this court in the case of *State v. Rule*, 11 Okla. Cr. 237, 144 Pac. 807.

The contention that this evidence, and other evidence admitted showing discrepancies in the books of the company kept by the defendant, tended to prove the defendant guilty of an offense different from that charged in the information, to wit, the offense of making false entries on the books of the company, and for that reason was inadmissible, is without merit, because the proof of the embezzlement charged was so closely linked with the evidence of false entries that proof of the one could not properly have been made without some evidence of the defendant having falsely kept his books.

The evidence of similar embezzlements by the defendant covering a period of one month immediately preceding the 6th day of November, 1914, was competent as tending to shed light on the question of whether or not the defendant took the particular amount charged in the indictment on the 6th day of November, 1914, or whether he forwarded the same to the home office of the company in Chicago. Proof that the defendant was short in his accounts with the railroad company, and that the company's auditor was engaged in an audit of his books, was a circumstance properly to be considered by the jury, which, when taken together with the sudden departure of the defendant from the city of Anadarko, tended strongly to the conclusion that when the defendant left he took

with him the entire receipts of the company collected on the 6th day of November, 1914, instead of forwarding the same to the home office, as contended by him. Such circumstantial evidence was properly admissible as corroborating the evidence of state's witnesses to the effect that no currency was inclosed in the envelope forwarded to the Illinois Trust & Savings Bank on the 6th day of November, 1914.

It is also contended that the court erred in instructing the jury relative to these certain items of alleged misapplication of funds other than that charged in the information. We have carefully examined the instructions given, and considered the same in connection with the argument advanced by defendant's counsel. One of the instructions complained of, if considered by itself, is incomplete and subject to the criticism advanced that the trial court assumed that there had been other misapplications of funds than that charged in the information, but when considered in connection with the other instructions given—in other words, when the charge of the court is considered as a whole—the contentions are not well founded, and the instructions sufficiently cover the law of the case and are not misleading. In this connection it may be remarked that the defendant requested no instructions other than those given by the trial judge on his own motion.

The Legislature has specifically provided in section 6005, Revised Laws 1910, that the appellate court shall not reverse any judgment of conviction in a criminal case "on the ground of misdirection of the jury or the improper admission or rejection of evidence, * * * unless, in the opinion of the court * * * after an examination of the entire record, it appears that the error

complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of constitutional or statutory right." Neither of the alleged errors advanced as grounds for the reversal of this judgment is of such a prejudicial nature as to authorize the court under the statute aforesaid to reverse the judgment.

On the whole, the case was carefully and fairly tried. The defendant had the advantage of very able counsel, who was untiring in his efforts to protect the rights of the defendant at every stage of the trial, and that a verdict of guilty resulted cannot be chargeable to any lack of diligence or oversight upon the part of defendant's counsel, but rather the direct and circumstantial evidence of the state's witnesses, which, if believed, led to no other logical conclusion than that of defendant's guilt.

The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.