## G. W. USSAERY v. STATE.

No. A-3857. Opinion Filed Jan. 20, 1923.
Rehearing Denied April 21, 1923.
(212 Pac. 137.)

(Syllabus.)

1. **Trial—Instruction not Required on Theory not Supported by Evidence.**—The trial judge is not compelled to delve into the realms of conjecture or speculation to instruct on some theory of the case not reasonably supported by the evidence.

2. **Homicide—Lack of Evidence to Support Requested Instruction that Homicide Justifiable Because Accused was Attempting to Preserve Peace.**—It is not error to refuse a requested instruction in a homicide case, based on the theory that the defendant was justifiable because the homicide was committed in attempting by lawful ways and means to keep and preserve the peace, where there is no evidence adduced either by the state or by the defendant reasonably supporting such theory of defense.

3. **Trial—Refusal of Requested Instruction when Covered by Given Instruction.**—Where the instructions given sufficiently cover the law as contained in a requested instruction, it is not error to refuse such requested instruction, although the same may correctly state the law.

4. **Homicide—Proper Instruction on Insanity as Defense.**—Instructions on the defense of insanity considered, and held sufficient.

5. **Appeal and Error—Burden on Appellant to Affirmatively Show Error.**—When the entire argument on both sides is not before the court, and the county attorney contends that his argument is in reply to argument advanced by defendant's counsel, and the trial judge overrules the objection to such argument, this court will not pass on the alleged error, unless the argument complained of constitutes a violation of some constitutional or statutory right of the defendant. Under such circumstances the presumption will be indulged on appeal that the trial judge ruled that such argument was permissible as reply argument, as the burden is upon the appellant to affirmatively show error in the ruling of the trial court.

.6.   **Appeal and Error—Requisites of Brief—Error in Rulings on Evidence.**—When the error alleged relates to the omission or to the rejection of evidence, the brief should quote the full substance of the evidence admitted or rejected, stating specifically the objection thereto as required by rule 7 (12 Okla. Cr. viii, 165 Pac. x).

'7.   **Homicide—Evidence Sustaining Conviction of Manslaughter in First Degree.**—Evidence examined, and held sufficient to support the verdict and judgment.

Appeal from District Court, Pontotoc County; J. W. Bolen, Judge.

G. W. Ussaery was convicted of manslaughter in the first degree, and he appeals. Affirmed.

R. C. Roland, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J. This is an appeal from the district court of Pontotoc county wherein the defendant was convicted of the crime of manslaughter in the first degree, and sentenced to serve a term of ten years in the state penitentiary. From this judgment and sentence he brings this appeal.

The facts as they are disclosed from the record set forth: That the defendant is a man about 66 years of age. That prior to the commission of the alleged offense herein, he had borne a good reputation as a law-abiding citizen. The defendant, the deceased, and Mrs. McBroom, together with other citizens, lived in the same block on West Sixth street in the city of Ada, Pontotoc county, Okla. Mrs. McBroom lived directly across the street from the defendant, and each of them lived upon the east corner of the block. The deceased lived on the west corner of the same block, and seems to have been troubled with some affliction similar to epilepsy, which at times rendered him apparently irresponsible for his acts.

On the day of the alleged killing, it is disclosed from the evidence that deceased left his home and went down to the home of Mrs. McBroom, and apparently attacked her, knocking her down with a brick, and severely mistreating her by stomping her and striking her, and the entire neighborhood became considerably excited over this happening. A woman living in the house next to the one occupied by Mrs. McBroom ran across the street to the home of defendant, and reported to him and his wife that there was a man over there killing Mrs. McBroom. Defendant immediately got up, and, going out his front door through the gate, approached deceased, who at that time had ceased his attack upon Mrs. McBroom, and she had escaped, meeting defendant about midway in the street as he was going to her relief. Defendant approached deceased, and engaged in a short conversation with him, which all of the witnesses failed to understand and know the nature of. After talking with deceased but a moment, defendant returned to his home, procured a shotgun, and walked toward the place across the street in front of the McBroom's where deceased was standing under a tree. There is testimony by some of the witnesses to the effect that at this time deceased had his knife open, and was scraping mud off his shoes, or was sharpening his knife on the sole of his shoe. When defendant had reached a point within from 10 to 25 feet of deceased (the testimony varies as to this distance), he fired loads from both barrels of the shotgun into the body of deceased, from the effects of which deceased died about six hours later. Defendant immediately returned to his home, and went from there to the sheriff's office, and said to the undersheriff:

"You will have to lock me up, as I shot Whit Hyden a while ago. He had Mrs. McBroom down, with a knife in his hand, and I went out to see what it was about, and Whit threatened to cut my throat. I went back in the house and

came out and Hyden jumped at me and cut me on the sleeve, and I shot him.''

The record in the case is very voluminous. A large number of witnesses were examined, and the entire history of this deplorable circumstance from the time of the appearance of deceased at the home of Mrs. McBroom until the killing took place was gone into and testified to by the witnesses offered by both the state and defendant.

One of the defenses was that of insanity. A goodly number of witnesses were examined upon that question, including the late Dr. John W. Duke, of Guthrie, as an expert. At the close of the testimony, defendant offered, through his attorneys, an elaborate set of instructions, comprising 17 different paragraphs, some of which were refused by the court and exceptions allowed, and the court then instructed the jury upon the law covering the case. After deliberation, the jury returned a verdict finding defendant guilty of manslaughter in the first degree, and fixing his punishment at 10 years in the penitentiary, as above stated.

The first alleged error presented in the brief deals with the court's refusal to cover requested instruction No. 9, which is as follows:

"You are instructed that under the statutes of this state homicide is justifiable when committed by any person in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace, and in this connection you are instructed that, if immediately prior to the homicide it was reported to the defendant that the deceased was stamping a woman to death across the street, he had a right to arm himself and go to where the deceased was for the purpose of preventing such assault, or for the purpose of keeping and preserving the peace, and in this connection you are instructed that the state of mind of the defendant is the

principal question for you to determine, and if you believe from the evidence, or have a reasonable doubt thereof, that the defendant believed that he was lawfully engaged in such purpose, even though said belief was a delusion, if such belief was entertained by him by reason of a diseased or unsound mind, then he would not be responsible for the act committed.''

Said instruction is based on subdivision 3 of section 1754, Compiled Statutes 1921, which reads as follows:

"Homicide is justifiable * * * when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping or preserving the peace.''

In this connection it is contended that it was the duty of the trial court to submit the law of the case from the viewpoint of defendant—"to view the entire situation from the defendant's standpoint." It has been repeatedly held by this court that the trial judge is not compelled to delve into the realms of conjecture or speculation to instruct on some theory of the case not reasonably supported by the evidence. Newby v. State, 17 Okla. Cr. 291, 188 Pac. 124. In this case the defendant failed to take the witness stand in his own behalf. What his viewpoint was cannot be gleaned from the record before us. The uncontradicted evidence is to the effect that any assault upon the person of Mrs. McBroom by the deceased had been discontinued, and that Mrs. McBroom was either in the house of the defendant, or else met the defendant in the middle of the street when the defendant first went to the place where the deceased then was. In this connection it must also be remembered that after this the deceased and defendant had a conversation, the nature of which is not known to any of the witnesses, and that immediately thereafter the defendant returned to his house across the street, procured his loaded shotgun, and again returned to the place where deceased was then standing, and there shot and killed the deceased at

a time when the deceased was making no attack on Mrs. Mc-Broom or on anybody else. There is no testimony from the lips of any of the state's witnesses that required the submission of the case to the jury on the theory presented by requested instruction No. 9. The evidence on the part of the state disclosed a willful and deliberate killing, and would have justified the jury in returning a verdict of guilty of murder.

Such being the case, under our statute, the burden then shifted to the defendant to produce evidence that he was justifiable within the meaning of the statute above quoted. Culpepper v. State, 4 Okla. Cr. 103, 111 Pac. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668; Smith and Sutgray v. State, 22 Okla. Cr. 383, 212 Pac. 1012, and cases cited in the latter opinion. The defendant failed to assume the burden that the law placed upon him, under such circumstances, of adducing evidence to justify this killing. It was not error, therefore, for the trial court to refuse to give requested instruction No. 9, above quoted, and what has been said with reference to the refusal of the court to give this requested instruction is equally applicable to the complaint lodged against instruction No. 4-a, contained in the general charge, on the subject of the defendant having forfeited his right of self-defense. The issue of self-defense is not reasonably presented by any evidence in this case. Any alleged error, therefore, in trial court's charge on that subject would not be good ground for reversal.

It is also contended that the trial judge erred in refusing to give requested instruction No. 2, which is as follows:

"You are instructed that the defendant has interposed as one of his defenses in this case the plea of insanity. When that defense is interposed, the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds

a reasonable doubt of his sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the minds of the jury by competent evidence beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if only he introduces sufficient evidence to raise in your minds a reasonable doubt of his sanity, and when this is done you are instructed that the burden of proof is upon the state to prove the sanity of the defendant by competent evidence, beyond a reasonable doubt, before you would be justified in convicting the defendant as charged in the information, and then the burden of proving the sanity of the defendant rests upon the state, like that of proving any other material allegation of the information; and if you believe that the state has failed to prove by competent evidence, beyond a reasonable doubt, the sanity of the defendant, and if from all the the evidence in the case there is reasonable doubt in your minds as to the sanity of the defendant, you will return a verdict of not guilty and acquit him.''

The foregoing instruction correctly states the law, and was copied verbatim from an instruction requested in the case of Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119.

The evidence on the part of the defendant's witnesses was directed solely to the question of defendant's sanity at the time of the commission of the crime There was evidence on the issue of insanity, requiring the trial judge to submit that issue under an instruction or instructions properly stating the burden of proof on that issue. Therefore, unless the general charge sufficiently covered the matters presented, by requested instruction No. 2, it was error to refuse such instruction. Instruction No. 4 given on this subject is as follows:

''The next defense offered by the defendant is that of insanity; and in this connection you are instructed that under the law all parties are presumed to be sane until the contrary is shown, and the burden is on the defendant to offer suffi-

cient evidence to raise in your mind a reasonable doubt as to the sanity of the defendant at the time of the fatal shooting; and, when such evidence is so offered by the defendant, then the burden shifts to the state to prove to your mind beyond a reasonable doubt that the defendant at the time he fired the fatal shot was sane.

"And in this connection you are instructed that the defendant is not required to prove his insanity, to the satisfaction of the minds of the jury beyond a reasonable doubt or by a preponderance of the evidence, but it is sufficient to shift the burden to the state if he only introduces enough evidence to raise a reasonable doubt of his sanity at the time of the fatal shooting."

The instruction given sufficiently covered the law contained in the requested charge; the alleged error in refusing to give requested instruction No. 2 was cured by giving instruction No. 4, above quoted.

It is further contended that the instructions given on the subject of insanity were erroneous because the court did not tell the jury that the "test of criminal responsibility—for an act which is declared to be a crime is fixed at the point where the accused has the mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act." On this subject the court gave the following instructions:

"(5)   A sane person is a person who has sufficient knowledge and understanding to know right from wrong, and to comprehend and understand the consequences of his act; and an insane person in law is a person who has not the mental capacity, by mental disease or otherwise, to know and understand right from wrong, and to comprehend and understand the consequences of his own acts.

"(6)   And in this connection you are instructed that, if the defendant at the time of the shooting had sufficient mind and understanding to know right from wrong regarding

the particular act, and was able to comprehend and understand the consequences of such act, the law recognizes him as sane, and holds him responsible for such act.

"(7) And in this connection if you should find beyond a reasonable doubt that the defendant took the life of Whit Hyden as charged in the information, and that at the time of such commission he knew and understood that it was wrong to take his life, and was able to comprehend and understand the consequences of such act, then in that event it will be your duty to find the defendant guilty of murder as charged in the information, unless you find him guilty of manslaughter, or acquit him, under other instructions herein given.

"But, on the other hand, if the defendant was not able to know that the act of taking his life was wrongful, and was not able to comprehend and understand the consequences of such act, then you should find the defendant not guilty."

It is argued that by instruction No. 5, supra, "the court meant, and the jury could understand nothing else, but that must at all times be incapable of distinguishing between right and wrong, and at all times be unable to comprehend and understand the consequences of his acts." That instructions No. 6 and 7, while attempting to cure the vice of No. 5, do not have that effect. Instruction No. 5 is incomplete. Instructions No. 6 and 7 supplement No. 5, and when taken together, we think they correctly state the law of insanity applicable to the issue of this case under our statutes.

While in the case of Price v. State, 1 Okla. Cr. 358, 98 Pac. 447, this court said in effect that an erroneous instruction upon a material issue was not cured by a correct instruction upon the same question in another portion of the instructions, where such instructions are contradictory and inharmonious, it has never been held that an instruction, incomplete on a material issue, may not be supplemented by other instructions on the same issue, not contradictory with it.

This court has repeatedly held that the instructions must be considered as a whole, and that if, when so considered, they are not misleading, and sufficiently cover the law of the case, a conviction will not be set aside, even for misdirection in a particular paragraph of the charge. Winston v. State, 16 Okla. Cr. 648, 185 Pac. 832. We find the charge in this case sufficiently comprehensive on the subject of insanity, and as favorable to the defendant as the evidence warrants.

Complaint is also made of certain remarks of the county attorney in closing the argument for the state. All the argument is not before us. Some of the remarks complained of appear to have been made in reply to argument advanced by defendant's counsel, while others, we think, were in the nature of inferences clearly authorized by the evidence. When the entire argument on both sides is not before the court, and the county attorney contends that his argument is in reply to, argument advanced by defendant's counsel, and the trial judge overrules the objection to such argument, this court will not pass on the alleged error, unless the argument complained of constitutes a violation of some constitutional or statutory right of the defendant, as the presumption will be indulged that the trial judge ruled that such argument was reply argument. The burden in this jurisdiction is upon the appellant to affirmatively show error in the rulings of the trial court. Error is not presumed. Killough v. State, 6 Okla. Cr. 311, 118 Pac. 620.

Further, it is the duty of appellant to bring before the court enough of the proceedings in the lower court to permit this court to pass safely and intelligently upon the questions presented. Butler v. State, 22 Okla. Cr. 241, 223 Pac. 193.

Finally, it is contended that the court erred in the admission of incompetent evidence in rebuttal. No authority

is cited in support of this assignment, and the evidence complained of is not incorporated in the brief of counsel for defendant, as required by rule 7 (12 Okla. Cr. viii, 165 Pac. x).

In Klein v. State, 15 Okla. Cr. at page 360, 176 Pac. at page 414, this court said:

"Other alleged errors are complained of. Matters are asserted to be prejudicial to this defendant in the brief without the citation of a single authority to support the same. Defendant was ably and energetically defended in the trial court by the same counsel who represent him in this court, and we are inclined to believe that, if authorities had existed to support the numerous contentions relied upon for a reversal, the same would have been cited in the brief. The crowded condition of the docket of this court makes it practically impossible for this court to search the books for authorities to support assertions of error made in behalf of the appellant. The burden is upon the appellant, not only to assert that error occurred in the trial, but to support such assertions by both argument and authority."

The evidence is amply sufficient to sustain the verdict and judgment. The defendant was ably defended in the court below, and that a verdict of manslaughter, instead of murder, resulted is no doubt attributed to the untiring efforts made by counsel in behalf of their client.

Defendant has reached an advanced age. Prior to this homicide he had borne a good reputation as a law-abiding citizen, and it is extremely unfortunate that at such period in life he should be called upon to respond to the law's mandate. On the other hand, a human life has been taken without apparent justification or excuse, and a conviction for murder would have been sustained by the record before us.

Finding no reversible error in the record, the law must take its course.

Judgment affirmed.

BESSEY and DOYLE, JJ., concur.