HOMER SULLIVAN v. STATE.

No. A-8731. Nov. 9, 1934.
(37 Pac. [2d] 655.)

L. E. Mifflin, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter for convenience referred to as the defendant, was by information jointly charged with Dave Belcher of the crime of murder; was tried separately, convicted of manslaughter in the first degree, and sentenced to be imprisoned in the state penitentiary for a period of 10 years.

The testimony shows that on Sunday previous to the killing on April 11, 1933, Mike Davis and his brother Ned Davis attended church services in the neighborhood of their home, which is in the northwestern part of McCurtain county; that the said Mike and Ned Davis caused a disturbance at the meeting.  On the following Monday a number of citizens in that neighborhood went to the office of a justice of the peace, and were there met by the county attorney.  Charges were prepared and filed against Mike and Ned Davis for disturbing religious worship.

The record further discloses that on Tuesday Cal Sullivan, a brother of the defendant, had a fight with Mike Davis, and that Sullivan got the worst of the fight.  On Tuesday, the day of the killing, the defendant went to the home of J. H. Dean, a deputy sheriff, and requested Dean

to arrest the Davis boys. Dean inquired if there were papers out for the boys' arrest, and received an affirmative reply that the papers were at the office of J. W. Tew, a justice of the peace. Dean and the defendant went to the office of the justice of the peace and got the warrants which had been issued by the justice of the peace for the arrest of Mike and Ned Davis for disturbing religious worship. The deputy sheriff then requested the defendant to go to the home of Dave Belcher, who was a deputy sheriff, and get him to go and assist in making the arrest. The defendant went to the home of Belcher and got Belcher. Dean, Belcher, and the defendant started toward the home of the Davises, and on the way Mr. Dean deputized Claud McAlester to help him make the arrests.

In his testimony Dean states he got the defendant to go with them to show him the way to the Davis home, but he did not deputize him to assist in making the arrest. On the way to the Davis home, the defendant stopped at the home of a Mr. Holley and procured from him a 30-30 Winchester rifle. The testimony of J. H. Dean, one of the deputy sheriffs in the party, is that, when they got within 100 or 150 yards of the house, he told the defendant Sullivan not to come up to the house; that, when he and McAlester got up to the house, there were some people sitting on the porth, and he hollowed "Hello," and Mrs. Davis, the mother of the boys, asked what they wanted, and he told her they had some papers for Ned and Mike. They were invited into the house, and found Ned Davis, and were advised by Ned's mother that Mike had either left, or was fixing to leave, for Colorado, and intended to come back and pay his fine later. While they were waiting for Ned to get ready to go with them, they heard three shots fired. Ned Davis, in his testimony, testified that he thought he heard five.

The testimony further shows that, immediately after the shots ceased, Dave Belcher rushed in the room, and, on being asked what was the matter, said there was some shooting going on out there. Belcher and McAlester went out and discovered Rube Davis, the father of Mike and Ned, lying about 70 feet east of the back of the house, the house facing west, and nearby they found Mike Davis, who was unconscious. They carried Rube and Mike Davis into the house, and Mike died in a few minutes. The record further shows that the defendant was not seen at or near the Davis place after the shooting, but the next day he came into Idabel and surrendered. Two shells were found that fit the 30-30 gun the defendant had borrowed from Holley and had carried with him to the Davis place.

The defendant testified he was deputized by J. H. Dean, the deputy sheriff, to assist in the arrest of Mike and Ned Davis; that there had been a charge of felony filed against the Davis boys, and that they were arresting them for disturbing religious worship, and on the felony charge; that the county attorney had advised them on Monday preceding Tuesday of the killing that the boys might be arrested upon a felony charge without a warrant, and the defendant insisted they were going to arrest the boys for both the felony charge and on the charge of disturbing religious worship.

The record further discloses that the county attorney testified in rebuttal that he had not given the defendant and his neighbors the authority or advised them to make the arrest of the Davis boys on the felony charge without a warrant. He stated he told them he would investigate the charge, and that, if he found they should be indicted for burglary, he would indict them. It is disclosed by the record that this burglary charge had been pending for some time. Mike and Ned were charged with

the burglary jointly with their father. The preliminary complaint was still pending in the office of the justice of the peace, but no warrant had been issued upon the charge and turned over to the officers when they went out to arrest Mike and Ned Davis for disturbing religious worship.

The defendant, testifying in his own behalf, stated they went out to arrest Ned and Mike Davis on a charge of burglary, and on a charge of disturbing religious worship upon a warrant that had been issued by the justice of the peace. He states positively that Deputy Sheriff Dean had deputized him to go with them, but admits that he was left some distance from the home of the Davises; that McAlester went to the front of the Davis home, and Belcher and the defendant went to the rear of the building. Defendant says he located himself near the northeast corner of the garden, and shortly thereafter he heard somebody hollow "Halt," and a shot was fired; that Mike Davis came running toward him and he hollowed to him to halt, "and threw his gun down and fired into the ground about 8 feet in front of me; that Mike ran a short distance and another shot was fired; Mike ran about 35 feet and fell; that shortly thereafter Rube Davis, the father of Mike Davis, came up; he was holding a pistol in both hands, and I told him to stop, and shot low to keep Rube Davis from killing me; Rube Davis fell, and I went on away, and the next day came in and surrendered."

The foregoing is an abstract of the testimony upon which the defendant was tried, convicted, and sentenced.

Fourteen errors have been assigned by the defendant as grounds for reversal. It is only necessary to discuss the first assignment of error, which is as follows: "Error of the court in overruling plaintiff in error's motion for

a new trial." The motion for a new trial covers all the other assignments.

In discussing the errors assigned, the defendant argues at length that the evidence is insufficient to sustain a conviction, and that his demurrer should have been sustained. In support of his contention, he argues there is no testimony in the record showing he shot Mike Davis, that the record fails to show any previous arrangement or agreement on his part and Dave Belcher to do bodily harm to Mike Davis, arguing that the defendant testified he did not shoot Mike Davis, and that a shot was fired from the house near where Dave Belcher was standing.

It is further contended by the defendant that the state failed to prove that Mike Davis was shot with a 30-30 caliber rifle. Dave Belcher was jointly charged with the defendant, and, as shown by the record, did not testify. It is not disputed by the defendant that his brother and himself and the Davis boys were enemies, and that he had ill feelings against the Davis boys. The only conflict in the testimony is the question, Did the deputy sheriff deputize the defendant to assist in making the arrest of Mike and Ned Davis, and in doing so, did the sheriff go to the Davis home for the purpose of arresting Mike and Ned Davis on a burglary charge without a warrant? The defendant insists they went to the Davis home for the purpose of arresting Mike and Ned Davis on both a misdemeanor charge, for which the deputy sheriff had a warrant, and on the burglary charge without a warrant. This contention is disputed by the sheriff; the sheriff further testifying that he left the defendant 100 to 150 yards from the Davis home, and advised him not to come up to the house.

The county attorney denies the statement of the defendant that he told them on Monday previous to the killing on the following day that they could go out and arrest the Davis boys on the burglary charge without a warrant.

The evidence shows that defendant stopped on the way to the Davis home and borrowed a gun from a Mr. Holley. The deputy sheriff says he got the defendant to go with him to show him the way to the Davis home. Defendant says that he heard the shot in the rear of the Davis home, he heard some one come running toward him, and that he said "Halt," and fired his gun into the ground in front of the party running, and that another shot was fired from the direction of the house, and Mike Davis ran a few feet further and fell. The defendant states immediately thereafter Rube Davis, the father of Mike Davis, came toward him with his pistol in both hands, and that he shot low and wounded Rube Davis to keep from killing him.

The jury heard the evidence and had an opportunity to judge the demeanor of the witnesses while testifying, and reached the conclusion that the defendant was guilty of manslaughter in the first degree. This court has repeatedly held that the issue of facts is for the determination of the jury, and a conviction will not be disturbed on appeal because of a sharp conflict in the evidence if the evidence adduced reasonably tends to support the verdict and judgment. Adeaholt v. State, 19 Okla. Cr. 122, 198 Pac. 351; Campbell v. State, 23 Okla. Cr. 259, 214 Pac. 738; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277.

The question of the granting of a new trial has been repeatedly passed on by this court, and the court has held that a motion for a new trial is addressed to the sound

discretion of the trial court, and its action will not be disturbed unless a manifest abuse of discretion appears. Ray v. State, 35 Okla. Cr. 322, 250 Pac. 438; McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026, 1028, and cases therein cited.

It is further contended by the defendant that the court erred in its general instructions and in refusing to give special instructions requested by the defendant. A careful examination of the instructions given by the court and those requested by the defendant disclose that the instructions given by the court, when considered in their entirety, correctly cover the law applicable to the facts in this case, and that the court did not err in giving its general instructions. It further appears from the record that the requested instructions by the defendant were not supported by the facts, as the instructions requested were based upon insinuations or contentions of the defendant without any competent evidence to support the defendant's contention that they had gone to the Davis home to make an arrest for a known felony, but he offered no proof to support his contention. The only effort made to prove the contention of the defendant was his statement, the statement of the deputy sheriff being positively contradictory, and the facts and circumstances surrounding the defendant at the time of the killing show conclusively that the officers did not go to the Davis home for the purpose of arresting Ned and Mike Davis on a burglary charge.

It has been held by this court many times that the trial court is not required to delve into the realms of conjecture and specially instruct on some theory of the law not reasonably supported by the evidence. Ussaery v. State, 22 Okla. Cr. 397, 212 Pac. 137; Fray v. State, 46 Okla. Cr. 260, 285 Pac. 142.

The record does not disclose sufficient facts to justify or to warrant the defendant in killing Mike Davis. The defendant was very fortunate that the jury did not find him guilty of murder under the facts and circumstances disclosed by the record. The defendant was accorded a fair and impartial trial. The court correctly advised the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal. The evidence is sufficient to sustain the judgment.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.