**Jose Flores FLORES, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–93–977.**

Court of Criminal Appeals of Oklahoma.

June 27, 1995.

Ron Wallace, Tulsa, for appellant at trial and Paula J. Alfred, Tulsa County Public Defenders Office, Tulsa, on appeal, for appellant.

Sarah Smith, Tulsa, for the State at trial, and Susan Brimer Loving, Atty. Gen. of Oklahoma and Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for the State on appeal.

### ORDER DENYING REHEARING

On February 13, 1995, the appellee, State of Oklahoma, filed a Petition for Rehearing in the above styled case after the appellant's conviction was reversed and remanded for new trial by this Court on January 24, 1995. A petition for rehearing may only be filed if 1) some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or 2) the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument. Rule 3.14(B), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1994, Ch. 18, App. As the complaints raised in the Petition for Rehearing do not fall within the above criteria, rehearing is not warranted in this case.

1. 896 P.2d 558 (Okl.Cr.1995).

**IT IS THEREFORE THE ORDER OF THIS COURT** that this Petition for Rehearing is **DENIED.**

IT IS SO ORDERED.

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Presiding Judge
Dissent

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Judge
Dissent

/s/ James F. Lane
JAMES F. LANE
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR
Judge

CHAPEL, Vice Presiding Judge, specially concurring:

When the State seeks to convict one of its citizens of a crime and deprive that citizen of his or her life or liberty, the State should, at the very least, be required to follow the law. Quite appropriately, this Court applies the "harmless error" doctrine to errors which neither result in a miscarriage of justice nor constitute a substantial violation of a constitutional or statutory right. Thus, our law does not require perfection by the State in prosecuting a citizen. We can, and do, frequently deem harmless those errors which do not substantially violate an individual's rights.

In our opinion issued in this case, *Flores v. State,*[1] we were in unanimous agreement (i) that the trial court erred in giving its infamous "presumed not guilty" instruction, and (ii) that the error was not harmless. The Court now finds itself mired in disagreement over the application of the harmless error doctrine to the error in this case. I find *Flores* to be clear. The error was analyzed, the harmless error doctrine was applied, and the Court unanimously concluded the error was not harmless. A majority of the Court stands by that analysis and conclusion.

A minority, however, has concluded that in some cases, if proof of guilt is sufficiently strong and there are no additional errors, this instructional error can be deemed harmless. I find this kind of analysis alarming. By following it, one can conclude that any error is harmless if the defendant is really guilty and the proof is overwhelming. The degree of proof of guilt can and should be a consideration in the applicability of the harmless error analysis. But it should not be the determinative factor, and I fear that is where the minority would lead us. Simply because the defendant is guilty does not mean the State does not have to follow the law.

Our system of criminal justice is presently being tested as it never has before. Modern video recording technology and scientific forensic methods, properly performed, appear to eliminate doubt as to guilt in many cases. The application of discovery principles to criminal proceedings and wholesale changes in ethical rules applicable to the legal profession have resulted in confusion as to the role lawyers play in what has heretofore been an "adversarial system." The weakening of the concept of finality of judgment through the adoption of liberal habeas rules has permitted appeals to routinely go on for 15 to 17 years. These developments, along with televising criminal trials, have exposed our entire population to apparent dilemmas, absurdities and inconsistencies within our system.

What can possibly justify appeals taking 15 or 17 years? How can the system explain a not guilty verdict when the whole nation has seen a video recording conclusive as to guilt? How can a defense lawyer argue for acquittal when the DNA evidence is conclusive? We see these questions and many others raised by "experts" almost daily in the nation's newspapers and on televised news programs. Traditional answers to these questions are tiring, complex and unsatisfactory. The plain fact is that science and technology have advanced faster than our legal procedures. Thus, it is quite true that within the criminal justice system examples of apparent absurdities, inconsistencies and inexplicable dilemmas abound. Our legislatures and courts

will respond to these issues, and eventually the system will be brought back into balance. Hopefully, our responses to these problems will be deliberate and measured and protective of those things that are good in our system.

Many of our system's inconsistencies have always existed and over the course of history have been a source of great pride to many citizens. Indeed, the presumption of innocence, the issue involved in this appeal, can be viewed as an absurdity in the face of overwhelming guilt. But who among us, in an eighth or ninth grade civics class, has not felt pride in our justice system when it was compared to foreign systems where a defendant may not be entitled to such a presumption.

While our legal system may have many problems, there is one solid, immutable principle which must be preserved and protected, and that is due process. No matter how guilty a person may be, he or she is entitled to due process. To suggest otherwise is to sanction mob justice and tyranny. We do no honor to our system by winking at serious trial error. If a defendant is guilty, he or she should be convicted in every case by the state in a trial that is free of serious error.

Judge Lumpkin in his dissent sets forth the applicable Oklahoma harmless error statute [2] but declines to follow it, preferring instead the Federal Courts' more liberal harmless error doctrine. Judge Lumpkin complains that this Court has somehow defaulted in its duty to develop a "standard" which can be applied to these cases. We should, and do, decline his invitation. The statute is clear and there is no need for this Court to confuse the issue by judicially legislating an amendment to it. The harmless error standard applicable to statutory errors is whether or not the error "constitutes a substantial violation of a ... statutory right." [3] We cannot improve upon the language by trying to define the word "substantial," and to try would be as useless as trying to define the phrase "reasonable doubt." A majority of this Court finds the error in this case to be a

**2.** 20 O.S.1991, § 3001.1.

**3.** *Id.*

substantial violation of a statutory right. It is not, therefore, harmless.

Clearly, Oklahoma statutes require a trial judge in a state criminal case to instruct the jury that the defendant is "presumed innocent" of all crimes charged.[4] This Court unanimously agrees that the trial judge in this case erred when he instructed the jury that Flores was presumed to be "not guilty" of the first degree murder charge filed against him. We are, however, currently divided over whether the *Flores* holding must be applied to other appellants who have raised this issue on direct appeal.[5] A majority of this Court is convinced that *Flores* must be applied to all other such cases.[6]

The United States Supreme Court has recognized that a presumption of innocence instruction serves two purposes: (i) it "remind[s] the jury that the prosecutor has the burden of proof beyond a reasonable doubt, ... [and (ii) it] ... 'cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclu-

sion solely from the legal evidence adduced.'"[7] The presumption of innocence instruction thus reiterates and helps the jury understand an accused's constitutional rights to (i) be proven guilty beyond a reasonable doubt, and (ii) be judged solely on the basis of evidence presented during trial.[8] When administered, the presumption of innocence instruction shapes the jury's understanding of a criminal defendant's constitutional rights, and thus affects how the jury performs its duty to render a verdict in accordance with those rights.

Despite its role as protector of constitutional rights, however, a presumption of innocence instruction is not mandated by the United States Constitution.[9] The United States Supreme Court has concluded that juries are capable of applying the constitutionally requisite "beyond a reasonable doubt" standard and considering only the trial evidence, even if they are not specifically instructed that a defendant is presumed innocent. If the trial record reflects that a criminal defendant was otherwise afforded his or her rights (i) to be proven guilty

---

**4.** *See* 22 O.S.1991, § 836 (Defendant presumed innocent—Reasonable doubt of guilt requires acquittal); 12 O.S.1991, § 577.2 ("Whenever Oklahoma Uniform Jury Instructions (OUJI) contains an instruction applicable in a ... criminal case, ... and the court determines that the jury should be instructed on the subject, the OUJI instructions shall be used unless the court determines that it does not accurately state the law."). *See also* OUJI–CR 110 ("Presumption of Innocence").

**5.** In his dissent to this order, Judge Lumpkin's analysis of the issue presented, while unquestionably sincere, is flawed by his perception that the error in these cases can be deemed harmless if there are not other errors and there is overwhelming proof of guilt. The issue presented to us is not whether or not the defendant is guilty. Rather, the issue is whether or not the defendant received a fair trial in accordance with Oklahoma statutes. It is not the business of this Court to sit as a super-jury. It is our business to see that the trial courts follow the law. And, if they do not follow the law, it is our sworn duty to reverse them however difficult or unpopular it may be to do so.

**6.** This Court is not unmindful of the difficulties our decision will bring to the District Court of Tulsa County. We are well aware a large number of cases will have to be retried because of this error. While we are sympathetic to these very real problems, we cannot ignore the clear

dictates of the law to reach an expedient result. We are not ordering dismissal of these cases. These cases will be reversed and remanded for new trials. In addition, we are, hopefully, sending a message to the trial judge and the prosecution. Our message to the trial judge is very simple: follow the law. Our message to the prosecution is that it should join with the defense in objecting to a clearly erroneous instruction. With both sides objecting, it is much less likely a trial judge will insist on giving an erroneous instruction.

**7.** *Kentucky v. Whorton*, 441 U.S. 786, 790–91, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979), *quoting* 9 J. Wigmore, Evidence § 2511, p. 407 (3d ed. 1940) (Stewart, J., dissenting). *See also Taylor v. Kentucky*, 436 U.S. 478, 484–86, 98 S.Ct. 1930, 1934–35, 56 L.Ed.2d 468 (1978) (recognizing that a "presumption of innocence" instruction significantly aids the jury in understanding the prosecutor's burden to prove guilt beyond a reasonable doubt, and also provides one means of explaining to the jury the accused's constitutional right to be judged solely upon the evidence adduced at trial).

**8.** *See Taylor v. Kentucky*, 436 U.S. at 484–86, 98 S.Ct. at 1934–35.

**9.** *Kentucky v. Whorton*, 441 U.S. at 789, 99 S.Ct. at 2090.

beyond a reasonable doubt and (ii) to be judged solely by evidence adduced at trial, the trial may be considered fair under the United States Constitution even if a presumption of innocence instruction was not administered.

The case at issue, however, involves much more than a trial judge's simple omission of the presumption of innocence instruction—an error which violates Oklahoma statutes but not the United States Constitution. Here, the trial judge administered an instruction on the presumption of **not guilty**—an error which violates both the letter and spirit of Oklahoma statutes as well as the United States Constitution. Just as a presumption of innocence instruction would have shaped and influenced both the jury's understanding of Flores's constitutional rights and its role in honoring those rights, so did the instruction on the presumption of not guilty. Unfortunately, the presumption of not guilty instruction did not serve to improve the jury's understanding of Flores's constitutional rights. Instead, the presumption of not guilty instruction effectively diluted Flores's constitutional rights to be proven guilty beyond a reasonable doubt and only by the evidence developed at trial, possibly causing the jury to take less seriously its duty to abide by them.

How could the jury in this case have remained unaffected by the trial judge's instruction that Flores was presumed **not guilty** rather than innocent? Most any person qualified to sit on a jury in this country is familiar with the phrase that a criminal defendant is "presumed innocent until proven guilty." If the trial judge had simply failed to tell the jurors to presume Flores was innocent, chances are they still would have considered it their obligation to do so. However, when the trial judge specifically and negatively altered the well-known phrase, the jurors may have questioned their own common sense understanding of it which they

had each consciously or unconsciously brought into the courtroom.

To ask jurors to presume that a criminal defendant remains innocent until the State proves him or her guilty, both **acknowledges** their inclination to believe that one who has been arrested, charged and bound over for trial must have violated the law, and **commands** them to suppress that inclination. The trial judge's presumption of not guilty instruction demanded much less of Flores's jury. Rather than requiring that the jurors chase from their minds all images of Flores as shackled, blameworthy, culpable, the presumed not guilty instruction allowed the jurors to retain their biases and asked only that they hold the State to its legal burden to prove him guilty beyond a reasonable doubt.

The trial judge himself appreciates the radical difference between the phrases "presumed innocent" and "presumed not guilty," as evidenced by the following quote from another case in which he also chose to administer an instruction containing the latter, incorrect terminology:

> Again as I have stated many, many times I do not give an instruction that is in the OUJI; to give a reason for not doing so, I believe that in the OUJI instruction, they state that the defendant is presumed to be innocent. There is a difference between being innocent and not guilty. A person can be found not guilty and still not be innocent of the crime charged.[10]

Judge Hopper's words support the majority's conclusion that the phrase "presumed not guilty" is not reasonably synonymous with the phrase "presumed innocent."[11] Those words also provide an example of the danger in allowing individuals in positions of power to follow their own personal beliefs rather than the law.

---

10. *Smith v. State*, (Tulsa County District Court, CF–93–4510) No. F–94–430, Tr. 212.

11. Judge Hopper's words also clearly demonstrate that there is more to the two phrases than

a "distinction without a difference" as Judge Lumpkin would have us believe. In fact, the United States Supreme Court in another context has implicitly recognized that the terms "not guilty" and "innocent" are not interchangeable.

Ours is "a government of laws and not of men."[12] This historic phrase, which expresses the aim of those who framed our Declaration of Independence and founded the Republic, "was the rejection in positive terms of rule by fiat, whether by the fiat of governmental or private power."[13] Under a government of laws and not of men, "power must be exercised according to law; and government, including the courts, as well as the governed, must move within its limitations."[14] "[T]here is no arbitrary power located in any individual or body of individuals; but ... all in authority are guided and limited by those provisions which the people have, through the organic law, declared shall be the measure and scope of all control exercised over them."[15]

The citizens of Oklahoma, speaking through the State legislature, have declared that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved,...."[16] An instruction on the presumption of **innocence** is included in the Oklahoma Uniform Jury Instructions (Criminal),[17] and must be administered to juries in criminal trials.[18] The Oklahoma citizenry has also declared that when a trial court determines that a jury should be instructed on a subject and an appropriate uniform instruction exists, the uniform instruction *shall be used* unless the [trial] court determines that it does not accurately state the law."[19] Judge Hopper's conscious decision to supplant the laws of this State with his own brand of justice constitutes government by whim, "the very antithesis of due process."[20]

"[E]ven if a law is found wanting on trial, it is better that its defects should be demonstrated and removed than that the law should be aborted by judicial fiat. Such an assertion of judicial power deflects responsibility from those on whom in a democratic society it ultimately rests—the people."[21] If

A trio of cases handed down on the same day in 1986 made clear that successive habeas petitions which are normally precluded from review may nonetheless be considered if a fundamental miscarriage of justice would otherwise result. *See Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed:2d 434 (1986); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Kuhlman v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). To ensure both that the fundamental miscarriage of justice exception would remain infrequent and that it would provide relief to those truly deserving, the Court explicitly tied the exception to the petitioner's actual innocence. *See Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995). By selecting the terms "innocent" and "actually innocent" rather than "not guilty," the Court made clear its intention that to obtain relief, a successive habeas petitioner must show that they are morally and factually innocent of the crime for which they are incarcerated and not just that they are not guilty under the law. The Court's careful choice of words strongly implies its awareness that the terms innocent and not guilty can mean vastly different things.

**12.** John Adams, "Novanglus Papers," no. 7.— *The Works of John Adams,* ed. Charles Francis Adams, vol. 4, p. 106 (1851).

**13.** *United States v. United Mine Workers of America,* 330 U.S. 258, 308–09, 67 S.Ct. 677, 703, 91 L.Ed. 884 (1947) (Frankfurter, J., concurring in the judgment).

**14.** *Id.* at 385, 67 S.Ct. at 741 (Rutledge, J., dissenting.).

**15.** *Cotting v. Godard,* 183 U.S. 79, 84, 22 S.Ct. 30, 32, 46 L.Ed. 92 (1901).

**16.** 22 O.S.1991, § 836.

**17.** OUJI–CR 110.

**18.** *Jenkins v. State,* 11 Okl.Cr. 168, 145 P. 500, 501 (1914).

**19.** 12 O.S.1991, § 577.2 (emphasis added). It should be noted that Judge Hopper does not defend his decision to administer a "presumption of not guilty" instruction rather than a "presumption of innocent" instruction on the grounds that the latter does not accurately state the law. Rather, he seems to harbor the personal belief that "presumed not guilty" better describes the manner in which a jury should view a criminal defendant awaiting trial.

**20.** *McGautha v. California,* 402 U.S. 183, 250, 91 S.Ct. 1454, 1488, 28 L.Ed.2d 711 (1971) (Brennan, J., dissenting), *vacated on other grounds,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972).

**21.** *American Federation of Labor v. American Sash and Door Co.,* 335 U.S. 538, 553, 69 S.Ct. 260, 265, 93 L.Ed. 222 (1949) (Frankfurter, J., concurring).

the citizens of this State wish to alter our statutory requirement that juries in criminal trials be instructed that defendants are presumed innocent until proven guilty, they are free to pursue their goals at the State legislative level. In the meantime, trial judges are bound by the rules which the people have enacted.

Dismissing as "harmless" the instructional error committed in this case would undermine two crucial tenets of our democratic society: that a criminal conviction must be supported by trial evidence which establishes guilt beyond a reasonable doubt; and, that our government is one of laws and not of men. I am unwilling to cast my vote in support of a diluted Constitution whose principles wax or wane at the pleasure of the individual who at a given time may be entrusted with their enforcement. I therefore support the majority's decision to reverse Flores's conviction, and concur in its denial of the State's Petition for Rehearing.

STRUBHAR, Judge, specially concurring:

It is with some trepidation that I write to this Order denying rehearing since the opinion of January 24, 1995[1] clearly sets forth the views of this Court, the dissents' remarks notwithstanding. I am saddened by the dissents' attempted evisceration of a principle so fundamental to our system. It is disheartening that Judge Lumpkin chooses to term as a "folkway" a principle which serves as the foundation of our criminal justice system. To discount the presumption of innocence is to succumb to the current trend in our society to shirk and devalue principles for short-term and short-sighted results.

If the presumption of innocence is not sacred in our system then what is to become of us. This Court took this challenge very seriously when it rendered its decision in this matter. Knowing its decision could affect many convictions, otherwise valid and cause great pain for victim's families, this writer agonized over the decision to find such an error may never be harmless. Yet, in the name of preserving convictions in which the accused is overwhelmingly guilty, the dissent attempts to drain *Flores* of much of its vitality. The dissents' untenable conclusion, that the error can be harmless when the evidence of guilt is strong, arises from a specious denial of the role of the Due Process Clause in protecting the invaluable guarantee afforded by the presumption of innocence.[2] Judge Lumpkin and Judge Johnson both agreed that the erroneous instruction in this case lessened the burden of proof. *See Flores v. State*, 896 P.2d at 564 (Lumpkin, J. concurring in result). However, they now somehow reason that such an error can be harmless if the evidence of guilt is overwhelming. This surely cannot be. If the instruction in this case lessens the burden of proof, an identical instruction in another case must also have the same effect regardless of the evidence of guilt. And when an instructional error consists of a misdescription of the burden of proof, it vitiates all of the jury's findings. *Sullivan v. Louisiana*, 508 U.S. ——, —— - ——, 113 S.Ct. 2078, 1082–83, 124 L.Ed.2d 182, 190 (1993). This leaves a reviewing court to engage in pure speculation as to what a reasonable jury would have done. *Sullivan v. Louisiana*, 508 U.S. at ——, 113 S.Ct. at 2082–83, 124 L.Ed.2d at 190. The Supreme Court has said such an error is structural and is not subject to harmless error review. *Id.*

The dissents' votes in this case are wholly inconsistent with their harmless error analysis. The facts show overwhelmingly that Mr. Flores brutally and savagely strangled Sheila Ann Brown and prior to her death caused severe and violent injury to her anal opening. After this savage murder Mr. Flores ruthlessly bound and gagged Brown and tossed her body into a trash dumpster. Yet in the *Flores* opinion of January 24, 1995, Judges Lumpkin and Johnson found the presumed not guilty instruction necessitated reversal because the error was harmful. It is they who need to more fully explain their change in position[3]; judicial integrity requires it.

1. *Flores v. State*, 896 P.2d 558 (1995).

2. While acknowledging a distinction between omitting an instruction on the presumption of innocence and administering an incorrect instruction, Judge Lumpkin employs the erroneous analysis used when an instruction is omitted rather than considering the specific question presented.

3. *See* Judge Johnson's Dissenting Opinion in which he states, "I must apologize to my col-

Truly, it is unfortunate that the dissent now finds the need to retreat from the original *Flores* decision in the wake of several reversals based on the plain error found in this case. Each member of this Court has sworn an oath to uphold the law and apply it without regard to public opinion, retention elections and the number of cases affected.

In our system the presumption of innocence gives concrete protection to the accused and forbids the State from imposing punishment unless it can demonstrate beyond a reasonable doubt at a public trial with the attendant constitutional safeguards that a particular individual has engaged in proscribed criminal conduct. "Our society's belief, reinforced over the centuries, that all are innocent until the state has proved them to be guilty, like the companion principle that guilt must be proved beyond a reasonable doubt, is 'implicit in the concept of ordered liberty,' *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), and is established beyond legislative contravention in the Due Process Clause. *See Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692–1693, 48 L.Ed.2d 126 (1976); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368 (1970). *See also Taylor v. Kentucky,* 436 U.S. 478, 483, 98 S.Ct. 1930, 1933–1934, 56 L.Ed.2d 468 (1978); *Kentucky v. Whorton,* 441 U.S. 786, 790, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979) (Stewart, J., dissenting)." *U.S. v. Salerno,* 481 U.S. 739, 763, 107 S.Ct. 2095, 2110, 95 L.Ed.2d 697 (1987) (Marshall, J., and Brennan, J., dissenting).

"It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people." *United States v. Rabinowitz,* 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting). Honoring the presumption of innocence can be difficult and sometimes we as citizens of a free society must pay substantial social costs as a result of our commitment to the values we espouse. But in the end the presumption of innocence protects the innocent. The shortcuts we take with those whom we believe to be guilty can only harm those wrongfully accused and, ultimately, ourselves.

It has always been my belief that one of this Court's most important roles is to provide a formidable bulwark against governmental violation of the constitutional and statutory safeguards securing in our free society the legitimate expectations of every person to innate human dignity and a fair trial. It is a regrettable abdication of that role and a saddening denigration of our system when members of this Court would condone arbitrary and capricious judicial conduct branding an individual as a criminal without compliance with constitutional and statutory procedures which ensure the fair and impartial ascertainment of criminal culpability. The dissents' position must surely be a short-lived aberration.

Throughout the world today there are men, women, and children imprisoned indefinitely, awaiting trials which may never come or which may be nothing more than a mockery because their governments believe them to be "dangerous." Our Constitution and its attendant principle of the presumption of innocence, whose construction began long ago, can shelter us forever from the evils of such unchecked power. Over our history our principles have slowly, through our efforts, grown more durable, more expansive, and more just. Yet, principles alone cannot protect us if we lack the courage, and the self-restraint, to protect ourselves. Today, the dissent applies itself to an ominous exercise in demolition. Theirs is truly a position which will go forth without authority, and come back without respect. The trial court's erroneous instruction altering the presumption of innocence to a presumption of not guilty amounts to plain error. As Mark Twain once said, "[t]he difference between the almost right word is really a large matter—'tis the difference between the lightning bug and the lightning."[4] Honoring the oath I swore upon taking this office, I concur in

leagues [for my vote] ... my reason for [my] concurrence was my position that although there was error, which is *clear and unambiguous,* I would have applied a harmless error test but in

*Flores,* I did not find harmless error...." (emphasis added).

**4.** *The Art of Authorship*

this Order denying the State's Petition for Rehearing.

JOHNSON, Presiding Judge, dissenting:

I also dissent to the Court's decision to deny the Petition for Rehearing in the above-styled cause. At the outset, I must apologize to my colleagues relative to my concurrence in the original case herein. *Flores v. State*, 896 P.2d 558 (1995). My apology is based upon my reading of the case. I did concur with the decision as it related to Jose Flores only. After many discussions by the Judges on this Court, I find that I was in error in interpreting the wording in the opinion. I was wrong in my interpretation of "whether the error is harmless error beyond a reasonable doubt or goes to the foundation of the case constituting a substantial violation of a constitutional or statutory right." *Flores v. State*, 896 P.2d at 560. My initial reading of the opinion and my reason for the concurrence was my position that although there was error, which is clear and unambiguous, I would have applied a harmless error test but in *Flores*, I did not find harmless error and, therefore, voted to concur. Now I find that the majority would reverse all *Flores* type cases due to the fact that it is a substantial violation of a statutory right and the harmless error doctrine would not apply. Therefore, I dissent.

I will not write a long dissenting opinion due to the fact I generally concur in the dissent written by Judge Lumpkin and find it to be an excellent historical analysis of not only the function of an appellate court but also an excellent analysis of the "harmless error doctrine". I specifically agree with Judge Lumpkin that the United States Supreme Court has not made a finding that the presumption of innocence instruction is of constitutional magnitude nor a constitutional requirement. *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).

I also agree with Judge Chapel's specially concurring opinion wherein he makes reference to all of the Court being unanimous in its position that there is error in the original *Flores* case when the judge instructed on "not guilty" rather than "presumed innocent". I further agree with Judge Chapel

that this will cause a great deal of difficulty and many additional trials in the District Court of Tulsa County. I agree with Judge Chapel that this Court has not created the error, this Court has not created the problem, the problem was created by a District Judge who did not follow the law and use the OUJI instructions as required to do.

I again would use the harmless error doctrine in all of these cases and would look at each case to see whether or not the cases could be affirmed by using such doctrine. Lawyers understand the great legal difference between the terms "presumed innocent" and "not guilty". While I feel this from a legal standpoint, I am not sure that jurors understand the significant difference between the two terms. Many layman would even consider this to be a legal technicality. Based upon this assumption, I would find that the harmless error doctrine could be applied to all of these cases and that the error does not constitute a substantial violation of a statutory right. Therefore, it is not so fundamental as it would require reversal of all of these cases. 20 O.S.1991, § 3001.1.

LUMPKIN, Judge, dissenting:

I must strongly dissent to the Court's decision to deny the Petition for Rehearing in this case. Without qualification, I have the greatest respect for the professional knowledge, experience and abilities of my colleagues on this Court. However, it now appears the plain language of the opinion is not being applied regarding the application of a harmless error analysis. The Court has now determined, in effect, the failure to give a presumption of innocence instruction is not subject to an application of harmless error because it violates a substantial statutory right. This decision is made without legal analysis or setting forth the criteria for determining when a statutory violation is "substantial". Because that decision fails to apply the rule of law regarding the application of harmless error to cases pending before this Court, I urge the Court to withdraw its original opinion so that it may be redrafted

to state what is the true decision of the Court in this matter.[1]

Before I examine the *Flores* case itself and the issues presented by it, I feel compelled to review the principles which comprise both the law and the basis for this dissent. I begin with the law as dictated by the Legislature to this and every other appellate court in the state. It reads:

> No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing Court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

20 O.S.1991, § 3001.1. The legislative dictate has not only been in effect since statehood because the Legislature does not like to see convictions reversed without a valid basis; but, it also reflects a deliberate and principled philosophy that, so long as a defendant in a criminal trial receives a fair trial, he is not entitled to reversal on an error which could not possibly have affected the outcome of his trial. Or, as the United States Supreme Court phrased it:

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States v. Nobles*, 422 U.S. 225, 230 [95 S.Ct. 2160, 2166, 45 L.Ed.2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it').
>
> . . . .
>
> Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any

other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.

*Rose v. Clark,* 478 U.S. 570, 577, 578–79, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

To a large extent, a harmless error provision such as we have forces the courts to recognize the authority granted to a republic comes only through the consent of the people to be governed. That consent is given based upon respect for the system and faith in its appropriate and pragmatic application. That respect is earned based upon rational and reasonable applications of the rule of law.

Alexander Hamilton discussed the role of the judiciary department in the proposed republic in The Federalist No. 78. This is the writing most often quoted for the statement "the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the constitution; because it will be least in a capacity to annoy or injure them." However, Hamilton also addressed the role of the Courts in the interpretation of legislative enactments when he wrote:

> It can be of no weight to say, that the courts on the pretence of a repugnancy, may substitute their own pleasure to the constitutional intentions of the legislature. This might as well happen in the case of two contradictory statutes; or it might as well happen in every adjudication upon any single statute. The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body. The observation, if it proved any thing, would

---

1. The number of separate writings to a very general Order Denying Petition for Rehearing, coupled with the extremes of broad labeling, in an effort to provide a different interpretation to the plain words in the original opinion, conclusively proves the need to reissue the opinion.

prove that there ought to be no judges distinct from that body.

It is especially incumbent upon appellate courts to maintain the appropriate perspective of the Court's role in the application of constitutional legislative enactments. The concept of "a government of laws and not of men" must be applied equally to appellate courts and trial courts. Personal distaste for the action of a single individual in the course of a trial should not cause the bending of a rule of law.

Because the (apparent) holding of this Court, that reversal is necessitated in all instances by these improper instructions, not only does not follow the law, but also is fraught with the potential for ridiculous and abusive results, I must dissent.

As the Court recognized in *Flores v. State,* 896 P.2d 558 (Okl.Cr.1995), "[t]he presumption of innocence until proven guilty is a right guaranteed by statute," citing to *Miller v. State,* 3 Okl.Cr. 374, 106 P. 538 (1910); 22 O.S.1991, § 836.[2] The Court then recognized a presumption-of-innocence instruction is not required by either the United States Constitution or the Oklahoma Constitution.

The Court has accurately recognized that regardless of the assumed mandate for the requirement of an instruction on the presumption-of-innocence, the guarantee is not provided through a constitutional right but by statutory enactment in the state of Oklahoma. This fact does not take away the aura of the legal concept; it only places the concept in its appropriate perspective for purposes of appellate review of error which may arise by failure to instruct on the statutory presumption.

The historical analysis of the concept is set out in *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895), where the United States Supreme Court recognized the presumption is not an articulated right under the Federal Constitution. Rather, it is inferred from the maxim from Roman law that "it was better to let the crime of a guilty person go unpunished than to condemn the innocent." *Id.* 156 U.S. at 454, 15 S.Ct. at 403, 39 L.Ed. at 491.

It is from this maxim that the Court in *Coffin* inferred the quote attributed to it in *Flores* that "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Therefore, it is readily apparent the principle is not based upon a strict constitutional right, but is inferred from the folkways or mores[3] which have developed over time in our application of law.

Acknowledging its genesis does not detract from its importance as a concept within our legal system; it only points out we must view it only through the specific articulation of the Oklahoma Legislature.

A more contemporary analysis of the *Coffin* decision is set out in *Culpepper v. State,* 4 Okl.Cr. 103, 111 P. 679 (1910), where the Oklahoma Court of Criminal Appeals analyzed the issue relating to an incorrect presumption-of-innocence jury instruction. The Court focused on what has since become an enunciation of a constitutional requirement, *i.e.,* that a jury must be correctly instructed regarding the burden of proof beyond a reasonable doubt. In applying the burden of proof analysis, the Court stated "we decline to follow the cases of *Horn v. Territory,* 8 Okl. 52, 56 P. 846, and *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481, in this respect, and we hold that there was no error in the instruction given." *Id.* 111 P. at 686. History has proven this view correct. *See Sullivan v. Louisiana,* 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

---

**2.** It does not matter how much one attempts to wrap a statute in the flag and Constitution, it is still only a statutory right subject to the rules applicable to harmless error review. We are bound by our oaths and role as appellate judges to interpret it as it is, and not how we wish it were. This is consistent with my original vote to the *Flores* opinion where I sought to provide the objective criteria for the application of harmless error analysis which had been omitted from the Court's opinion.

**3.** Websters Third New International Dictionary (unabridged) defines "folkway" as "a mode of thinking, feeling, or acting common to a people or to a social group"; and "mores" as "the fixed customs or folkways of a particular group that are morally binding upon all members of the group and necessary to its welfare and preservation". In other words, the unarticulated moral fabric which secures the future for a civilized society.

Therefore, the failure to give a presumption-of-innocence instruction or giving an incorrect presumption-of-innocence instruction is still subject to harmless error analysis.

This view is strengthened by Justice White, who in his dissent to Part III of the majority holding in *Arizona v. Fulminante,* 499 U.S. 279, 290–91, 111 S.Ct. 1246, 1254, 113 L.Ed.2d 302, 319 (1991), wrote:

> [W]e have held susceptible to harmless-error analysis the failure to instruct the jury on the presumption of innocence, *Kentucky v. Whorton,* (citation omitted) while finding it impossible to analyze in terms of harmless error the failure to instruct a jury on the reasonable doubt standard, *Jackson v. Virginia,* [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] (citations omitted). These cases cannot be reconciled by labeling the former 'trial error' and the latter not, for both concern the exact same stage in the trial proceedings. Rather, these cases can be reconciled only by considering the nature of the right at issue and the effect of an error upon the trial. A jury instruction on the presumption of innocence is not constitutionally required in every case to satisfy due process, because such an instruction merely offers an additional safeguard beyond that provided by the constitutionally required instruction on reasonable doubt. See *Whorton,* (citations omitted); *Taylor v. Kentucky,* (citations omitted). While it may be possible to analyze as harmless the omission of a presumption of innocence instruction when the required reasonable-doubt instruction has been given, it is impossible to assess the effect on the jury of the omission of the more fundamental instruction on reasonable doubt. In addition, omission of a reasonable doubt instruction, though a 'trial error,' distorts the very structure of the trial because it creates the risk that the jury will convict the defendant even if the state has not met its required burden of proof.

*Id.* 499 U.S. at 291, 111 S.Ct. at 1255.[4]

Therefore, even the dissenters in *Arizona v. Fulminante* acknowledged harmless error

analysis was applicable to the failure to give a presumption-of-innocence instruction. This is "because such an instruction merely offers an additional safeguard beyond that provided by the constitutionally required instruction on reasonable doubt."

Further proof can be found in *Kentucky v. Whorton,* where the Court stated:

> While this Court in *Taylor* reversed a conviction resulting from a trial in which the judge had refused to give a requested instruction on the presumption of innocence, the Court did not there fashion a new rule of constitutional law requiring that such an instruction be given in every criminal case. Rather, the Court's opinion focused on the failure to give the instruction as it related to the *overall fairness of the trial considered in its entirety.* (emphasis added)
>
> The Court observed, for example, that the trial judge's instructions were 'Spartan' (citations omitted), that the prosecutor improperly referred to the indictment and otherwise made remarks of dubious propriety, (citation omitted), and that the evidence against the defendant was weak. (citation omitted). '[T]he combination of the skeletal instructions, the possible harmful inferences from the references to the indictment, and the repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial.' (citations omitted)
>
> It was under these circumstances that the Court held that the failure of the trial court to instruct the jury on the presumption of innocence denied the defendant due process of law. Indeed, the Court's holding was expressly limited to the facts: 'We hold that on the facts of this case the trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment.' (citations omitted) (emphasis added). This explicitly limited holding, and

---

**4.** My further discussion of the reasonable doubt instruction, later examined by the Court in *Sullivan v. Louisiana,* 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) follows *infra.* In that

case, the Court found an incorrect instruction defining beyond a reasonable doubt cannot be subject to harmless error analysis.

the Court's detailed discussion of the circumstances of the defendant's trial, belie any intention to create a rule that an instruction on the presumption of innocence is constitutionally required in every case. 441 U.S. at 788–789, 99 S.Ct. at 2089–90, 60 L.Ed.2d at 643.

Thereafter, the Court set out the guidelines to be used in applying harmless error to the failure to give a presumption of innocence instruction.

This is contrasted with a more recent decision dealing with the failure to give a correct instruction defining "beyond a reasonable doubt." In *Sullivan v. Louisiana*, 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court determined the failure to give a correct "beyond a reasonable doubt" instruction allows an appellate court, rather than the jury, to reach the requisite finding of guilt. The failure to give a correct instruction in that case required reversal because there had not been a determination by the jury of the guilt; therefore "there is no object, so to speak, upon which harmless error scrutiny can operate."[5] 508 U.S. at ——, 113 S.Ct. at 2082, 124 L.Ed.2d at 190. The opinion then states:

> Insofar as the possibility of harmless-error review is concerned, the jury-instruction error in this case is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. (citations omitted). But, '[w]hen a jury is instructed to presume

malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt.' (citations omitted) And when the latter facts 'are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed.' (citations omitted). A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt. *Yates* [v. *Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)] (citation omitted). But the essential connection to a 'beyond-a-reasonable-doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings. (emphasis added) A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.' (citations omitted).

Chief Justice Rehnquist wrote a concurring opinion and added the analysis, based on *Arizona v. Fulminante*, and further stated:

> there is a 'strong presumption' that any error will fall into the first of these categories. *Rose v. Clark* (citations omitted). Thus, it is the rare case in which a constitutional violation will not be subject to harmless-error analysis. See *Fulminante* (citations omitted).

The strong presumption that any error will fall into the first of these categories refers to the category of "trial errors", which the Court, in *Arizona v. Fulminante* said "may ... be quantitatively assessed in the context

---

5. It is here the analysis must focus on the difference between the *object*, or *goal*, of a trial—here, the finding of guilt beyond a reasonable doubt—and the *starting point* from which that trial begins—here, whether a defendant is "presumed innocent" or "presumed not guilty." The gist of the *Sullivan* opinion is that, by giving an incorrect instruction on what "reasonable doubt" is, the jury did not know where the "goal" was; and when a reviewing court declares where the goal should have been, it takes from the jury the very constitutional guarantee provided by the constitution: to let the jury decide whether the prosecution reached its "goal" of beyond a reasonable doubt. This is not what occurred here. Here, the Court incorrectly told the jury where the

*starting place* was. This is an error that can be corrected by a reviewing court: so long as the jury knew where the "goal" was, the constitutional guarantee of being found guilty beyond a reasonable doubt has been preserved; and a reviewing court can review the evidence presented using the appropriate starting point to determine whether enough evidence was present to reach the goal. While not identical to it, this is substantially equivalent to conducting a review of the sufficiency of the evidence, something this Court does virtually every day. Therefore, *Sullivan* firmly supports the application of harmless error review and application in cases in which the presumed not guilty instruction was given.

of other evidence presented," and are amenable to harmless-error analysis. This Court regularly applies federal caselaw in determining the scope, method and application of harmless error analysis. While the provisions of 20 O.S.1991, § 3001.1 express the legislative intent for courts to apply a harmless error analysis, it does not obviate the methodology we have adopted from the federal courts in conducting that analysis.

This Court has repeatedly held a defendant is entitled to a fair trial, not a perfect one. See *Plotner v. State,* 762 P.2d 936, 946 (Okl.Cr.1988); *Lahey v. State,* 742 P.2d 581, 585 (Okl.Cr.1987); *Jones v. State,* 610 P.2d 818, 820 (Okl.Cr.1980); and *De Wolf v. State,* 96 Okla.Crim. 382, 391, 256 P.2d 191, 200–01 (1953). We must be ever vigilant to ensure the fairness of all proceedings wherein a person is prosecuted for the violation of penal provisions of our law. The factors which have been enunciated for the application of harmless error to errors which do occur during the course of a trial are founded upon the principle of fairness. The United States Supreme Court not only recognized this principle in *Kentucky v. Whorton* but also applied it in formulating the criteria to utilize in determining whether the error is harmless. I submit this Court should also review the error in this case "in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Id.* 441 U.S. at 789, 99 S.Ct. at 2090.

The Petition for Rehearing correctly points out Instruction No. 3 in this case was a correct instruction on the burden of proof. This is a fact which was apparently overlooked by each of the members of the Court during the initial review of the case. As the original opinion stated:

The presumption of innocence commands the jury to start their deliberations from the premise there exists an absence of guilt while the presumption of not guilty conveys there exists an absence of sufficient proof of guilt. While the distinction is subtle, we find it amounts to an impermissible lessening of the burden of proof by expanding the degree of doubt that is permissible. *Such error was not cured by any other instructions specifically, an appropriate burden of proof instruction.* (emphasis added) 896 P.2d at 562

The problem has now been correctly brought to the attention of the Court that in *Flores,* the jury was properly instructed as to the burden of proof (beyond a reasonable doubt) the State must meet for a defendant to be found guilty of the crime of Murder in the First Degree. The Court's original opinion failed to distinguish the general instructions contained in Instruction 1 and 2 with the specific elements of the crime instruction contained in Instruction No. 3. Those instructions read as follows:

### INSTRUCTION NO. 1

You are instructed that the burden of proof in this case is upon the State to establish by evidence, beyond a reasonable doubt, all the material allegations contained in the Information and unless the State has met it's duty in this respect, you cannot find the defendant guilty, but must acquit him.

### INSTRUCTION NO. 2

You are instructed that the defendant is presumed to be not guilty of the crime charged against him in the Information unless his guilt is established by evidence beyond a reasonable doubt and that presumption of being not guilty continues with the defendant unless every material allegation of the Information is proven by evidence beyond a reasonable doubt.

### INSTRUCTION NO. 3

You are instructed that no person may be convicted of Murder in the First Degree unless the State has proven beyond a reasonable doubt each element of the crime. These elements are:

1. The death of a human;
2. The death was unlawful;
3. The death was caused by the defendant;
4. The death was caused with malice aforethought.

I agree the use of the terms "material allegations contained in the Information" instead of

the terms "each element of the crime" in Instructions 1 and 2 is error. A juror cannot determine what is legally material or not and if what he or she deems material is an element of the crime that must be proven beyond a reasonable doubt. However, Instruction No. 3 provided the correct burden of proof instruction for the crime in this case as required by OUJI–CR 427. The specific instruction controls over the general instructions.

The only instructional error which was not corrected had to do with giving the "presumed not guilty" versus the "presumed innocent" instruction.[6] While I continue to agree that the concept of "presumed innocent" is an inherent part of the fabric of our jurisprudence, in all honesty, the concept from the standpoint of burden of proof and impacting the trial is no more than a gnat's hair difference to the average juror.[7] Therefore, under the Supreme Court decisions I have been able to review, it is almost a distinction without a difference as it applies to the ability of this Court, or any Court, to conduct a harmless error analysis. Based on the weight of the caselaw on this issue, I have been unable to discern a legal basis for the position that harmless error analysis can-

not be applied to failure to give an instruction on presumption-of-innocence, or even the incorrect instruction of presumed not guilty.[8]

In summary, then, the failure to give a presumption of innocence instruction, or even an incorrect statement of "presumed not guilty," does not preclude a harmless error analysis if, as in this case, a correct instruction regarding the burden of proof of each element of the crime beyond a reasonable doubt was given. The instructional error of an incorrect instruction of presumed not guilty is no different from any other instructional or evidentiary error which may be committed at trial. Each error is a "trial error" which is subject to harmless error analysis. There is a "strong presumption" the error is subject to harmless error analysis. Appellant Flores presented nothing in his brief showing why this presumption should not be honored here. Since that is—or should be—the starting point for this analysis, the presumption, combined with the analysis made herein, convinces me a harmless error analysis should be conducted.

In making this analysis, we in no way denigrate the significance of the concept of

6. The "material allegations" instruction is indeed error, but an appellate court can easily determine whether this instruction was harmless. If the jury had a question as to which allegations in the information were "material" and which were not; but the prosecution proved *all* allegations in the information, whether "material" or not, there can be no question such an error must be harmless, as any error (requiring the proof of additional allegations) enured to the benefit of the defendant. However, as noted, this instructional error was corrected in Instruction No. 3.

7. For example, Black's Law Dictionary (6th Ed.1990) defines "innocent" as "Free from guilt; acting in good faith and without knowledge of incriminatory circumstances, or of defects or objections. *See* Not Guilty." The dictionary defines "Not Guilty" as ".... Also, the form of verdict in criminal cases where the jury acquits the defendant; i.e., finds him 'not guilty.' "

8. *Cf., e.g., Pope v. Illinois*, 481 U.S. 497, 503 n. 7, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987) (unconstitutional instruction concerning obscenity) ("By leaving open the possibility that petitioners' convictions can be preserved despite the instructional error, we do no more than we did in *Rose* [*v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986)]. To the extent that cases prior to *Rose* may indicate that

a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, ... after *Rose*, they are no longer good authority"); *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986) (instruction on unconstitutional presumption dealing with intent subject to harmless error analysis); *Connecticut v. Johnson*, 460 U.S. 73, 83–84, 103 S.Ct. 969, 975–76, 74 L.Ed.2d 823 (1983) (plurality) ("We agree with the State that, in light of Chapman, these cases cannot be read for the broad proposition that instructional error of constitutional dimensions may never be harmless. This is not to say, however, that any form of instructional error should be analyzed for harmlessness. The question here is whether a charge that might reasonably have been interpreted to require a conclusive presumption on the issue of intent may be considered harmless."); *Hopper v. Evans*, 456 U.S. 605, 613–614, 102 S.Ct. 2049, 2054, 72 L.Ed.2d 367 (1982) (citing *Chapman* [*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705] [ (1967) ] and finding no prejudice from trial court's failure to give lesser included offense instruction); *Hamling v. United States*, 418 U.S. 87, 107–08, 94 S.Ct. 2887, 2902–03, 41 L.Ed.2d 590 (1974) (obscenity prosecution; in dealing with intervening law change between conviction and appellate decision, Court held reversal required only where there is a probability that instructions, now in-

presumption-of-innocence within our jurisprudence. We merely ensure it is not elevated beyond that position which it actually occupies within the jurisprudential framework. In this particular case, the presumed not guilty instruction violated the dictates of a state statute. That error, when coupled with the prosecutorial misconduct in closing argument, dictates a reversal and remand for new trial in this case. However, in a case which does not have other error and where the factors enunciated in *Kentucky v. Whorton* can be applied to determine if the error was harmless, this Court should apply the rule of law and exercise only its appropriate scope of appellate review.

As I read *Flores*, it unequivocally states (1) failure to give a presumption-of-innocence instruction and the giving of the presumed not guilty instruction is not a constitutional error, (2) the violation is one of state statute and not of state or federal constitutional magnitude, and (3) that the error is subject to harmless error analysis.[9] If the majority of this Court is now going to hold the giving of a presumed not guilty instruction is not subject to harmless error analysis due to the determination it violates a substantial statutory right under 20 O.S.1991, § 3001.1, I submit the appropriate action to take is to withdraw the original *Flores* opinion and rewrite it to state that position clearly. Merely to utilize the rubric of "it violates a substantial statutory right" without defining the legal criteria to be applied in determining when the violation of a state statute is "substantial" or not disregards our role and responsibility as an appellate court. In effect, the Court determines it will ascribe to the view Justice Stewart set out in his concurring opinion in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) where, after stating he viewed the United States Supreme Court decisions in *Roth* and *Alberts*, which sought to define obscenity, as being constitutionally limited to hard-core pornography, said "I shall not today attempt further to define the kinds of material I understand to be embraced with that shorthand description [obscenity]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." (emphasis added) Today this Court seems to adopt the "I know it when I see it" methodology in determining what is a "substantial violation of a .... statutory right." We should not utilize this type of jurisprudence to address such an important fiber in the fabric of Oklahoma statutory law. Without perimeters of legal construction being established to guide practitioners and future members of this Court it leaves the issue to forever waive in the wind like Oklahoma wheat prior to harvest. We do not fulfill our responsibility as the court with "exclusive appellate jurisdiction in criminal cases" for the State of Oklahoma when we do not provide the analysis required to create a body of law to which stare decisis can be applied in the future. It is impossible for future judges to know what we saw if we do not tell them.

We are doing a disservice to the practitioners and members of the judiciary of this state if we do not withdraw the opinion and allow the majority to state, with supporting authority, that the error is not subject to harmless error analysis to ensure the bench, bar and public fully understand the nature and basis of the Court's decision.

correct, "would have materially affected the deliberations of the jury.")

9. *See Flores*, 896 P.2d 558 at 560, where this Court said:

Because OUJI–CR–903 correctly sets forth the presumption of innocence and 12 O.S.1991, § 577.2 requires trial courts to administer the uniform instructions, we find it was error to deviate from OUJI–CR–903. We must now determine whether the error is harmless beyond a reasonable doubt or goes to the foundation of the case constituting a substantial violation of a constitutional or statutory right. [citations].

This would seem to indicate a harmless error analysis is to be applied. *See also Id.* ("The actual impact of the instruction in the instant case on the judgment of the jurors is difficult to determine."); *Id.* at 563 (Lumpkin, P.J., concurring in result) (discussing whether harmless error standard in the case should be "harmless beyond a reasonable doubt" or whether the reviewing court has "grave doubts" the error did not have a "substantial influence" on the trial).